## GRAHAM *v.* THE STATE.

1. Where in a criminal case an application for a change of venue was made under the act of 1911 (Acts 1911, p. 74), on the ground that there was a probability or danger of violence to the defendant, and a judgment refusing such change was brought to this court and reversed, and the change accordingly granted, the accused could not then withdraw his application, object to being tried in the county to which the change had been made, and demand a trial in the county where the indictment had been found.

(a) Where a person accused of crime applied for a change of venue under the act above mentioned, which was denied, and he excepted and obtained a reversal of the judgment; and where, on the return of the remittitur, the judgment of the Supreme Court was made the judgment of the superior court, and a county was named in the order as the place for the trial, and the clerk of the superior court of the county where the case was then pending was directed, in terms of the statute, to transmit the paper to the county so selected, this was in substance a judgment changing the venue, although it was not expressly so stated.

(*b*) Where in a criminal case a change of venue is granted, a certified copy of the order for that purpose is required to be transmitted to the clerk of the superior court of the county to which the change is made; but the original indictment and other papers in the case are required to be sent to that county.

2. Under the Penal Code (1910), § 917, "an arrest may be made for a crime by an officer, either under a warrant, or without a warrant if the offense is committed in his presence, or the offender is endeavoring to escape, or for other cause there is likely to be a failure of justice for want of an officer to issue a warrant."

(*a*) Under previous rulings of this court, a police officer of a city, in making an arrest for an offense against the State law, or for a violation of an ordinance of the municipality, falls within the protection of the section of the Penal Code just above cited.

3. By the Penal Code (1910), § 921, it is declared that a private person may arrest an offender, if the offense is committed in his presence or within his immediate knowledge; and if the offense is a felony, and the offender is escaping, or attempting to escape, a private person may arrest him upon reasonable and probable grounds of suspicion.

(*a*) This section was a codification of the pre-existing law. Unless clearly so intended, it will not be construed as working so radical a change in the prior law as to authorize a private person to arrest another for a violation of a municipal ordinance committed in his presence, when the act does not constitute a felony or a misdemeanor.

(*b*) Evidence was introduced to show that the person killed was a police officer of the City of Broxton, that he was not in uniform but had on a badge, and that he was engaged in arresting the accused when the homicide occurred. It was contended on behalf of the State that the accused was at the time violating an ordinance of the city, and also a penal law of the State; and an ordinance of the city was introduced. The charge of the court did not fully or clearly submit to the jury the issues involved.

4. It furnishes no ground for reversal that the court, when charging on the doctrine of reasonable fears, used the expression, "if the facts and circumstances were sufficient to excite in the mind of the person killing, as a reasonably self-possessed and courageous man, the fear that his life was in danger," instead of employing the statutory expression, "the fears of a reasonable man."

MAY 12, 1915.

Indictment for murder. Before Judge George. Irwin superior court. January 19, 1915.

Charlie Graham was indicted in Coffee county for murder. He applied for a change of venue, which was refused, and he excepted. The judgment was reversed. 141 *Ga.* 812. On the return of the remittitur to the trial court, it was ordered that the judgment of the Supreme Court be entered on the minutes of the superior court, "as the judgment of this court." An order was passed which recited these facts, and that it further appeared from a statement

of the solicitor-general and of counsel of record for the defendant that they were unable to agree on any county for the trial of the case; and declared that it was "considered, adjudged, and ordered by the court that the county of Irwin, of said State, be and is hereby selected by the court for the trial of the case," and directed the clerk of the superior court of Coffee county to forward to the clerk of the superior court of Irwin county a transcript of "this order for the change of venue, a list of all the witnesses subpœnaed in said case, and all other papers now of file in his office connected with said case." This order was passed on June 26, 1914. When the case came on for trial in Irwin county, the defendant filed objections to the trial proceeding there, on the grounds, that the venue was in Coffee county; that it had not been changed to Irwin county; that the order did not in terms change the venue, and was insufficient for that purpose, but merely selected Irwin county as the place for the trial, and directed the clerk to transmit a copy of the order, together with the other papers, to the latter county; that the original indictment and other papers in the case, except a transcript of the order, were directed to be transmitted to Irwin county, when a transcript of the indictment and other papers should have been ordered to be forwarded; that, in this situation, he waived his right to a change of venue, withdrew his motion therefor, and consented to be tried in Coffee county. These objections were overruled, and exceptions pendente lite were filed. The defendant was convicted. He moved for a new trial, which was refused, and he excepted.

*T. A. Wallace, McDonald & Grantham,* and *W. W. Bennett,* for plaintiff in error.

*Warren Grice, attorney-general, M. D. Dickerson, solicitor-general, Joseph B. Wall, H. J. Quincey,* and *A. L. Henson,* contra.

LUMPKIN, J. (After stating the foregoing facts.)

1. There was no error in overruling the objections to trying the case in Irwin county. The plaintiff in error moved for a change of venue, which was refused, and he brought the case to this court and obtained a reversal of the judgment. 141 *Ga.* 812 (82 S. E. 282). After the judgment of this court had been made the judgment of the court below, and an order had been taken directing the case to be tried in Irwin county, he sought to withdraw his application and to consent to a trial in Coffee county. Having ob-

tained a change, he should abide it. The act of 1911 (Acts 1911, p. 74) was passed in the interest of justice, to afford a change of venue where there was a probability or danger of violence. It was not intended to give a defendant the right to shift the venue back and forth at will, with incidental delays in trying him. Taking the order which was passed by the superior court in connection with the application and the proceedings in which it was passed, the selection of Irwin county as the place of the trial and the direction to the clerk to transmit the papers to that county was a change of venue, although it did not employ that exact expression. It may be the better practice in such a case to expressly direct that the venue be changed, and to designate the county to which it is changed, and where the trial shall take place. But the omission to employ such explicit words will not work a reversal, where it is entirely clear, as in this case, that the venue was in fact changed.

Where a change of venue is granted in a criminal case, a certified copy of the order passed for that purpose is required to be transmitted to the clerk of the superior court of the county to which the change is made. But the original indictment and other papers in the case, not certified copies of them, are to be sent to that county. Penal Code (1910), §§ 965, 1158. There was no merit in the objection to the trial in Irwin county.

2. At common law certain officers, as conservators of the peace, were entrusted with power to make arrests without a warrant in certain cases. The power to arrest for a felony was different from that to arrest for a misdemeanor. As to the latter a number of authorities declare that the officer could arrest without a warrant any person who committed a breach of the peace in his presence or within his view. Relatively to arresting officers the common law, with perhaps some modification, has been codified in the Penal Code (1910), § 917, which declares that "An arrest may be made for a crime by an officer, either under a warrant, or without a warrant if the offense is committed in his presence, or the offender is endeavoring to escape, or for other cause there is likely to be a failure of justice for want of an officer to issue a warrant." A police officer in making an arrest for an offense against a State law clearly comes within this section. In making an arrest without a warrant for a violation of a municipal ordinance he has been considered as coming within its protection. *Harrell* v. *State*, 75

*Ga.* 842. In *Porter* v. *State,* 124 *Ga.* 297 (52 S. E. 283, 2 L. R. A. (N. S.) 730), that section was declared to be applicable alike to State and municipal arresting officers. See opinion of the majority of the court and the concurring opinion in the *Porter* case.

3. The authority of a private person to arrest is more limited than that of an officer. Under the common law he could arrest for a felony committed in his presence. If he made an arrest for a felony otherwise, he did so at his peril. If called upon to justify his act, some courts have held that he must show that the felony had actually been committed, and that he had reasonable grounds for believing the person arrested to be guilty; while other courts have gone further, and held that he must show that the person arrested was actually guilty. As to misdemeanors, a private person could make an arrest for an affray or other breach of the peace committed in his presence, or to prevent its immediate continuance. These rules have been to a considerable extent modified by statutes and ordinances passed in pursuance of statutes. But with statutes other than our own we are not now concerned. The rule as to an arrest by a private person is thus stated in the Penal Code (1910), § 921: "A private person may arrest an offender, if the offense is committed in his presence or within his immediate knowledge; and if the offense is a felony, and the offender is escaping, or attempting to escape, a private person may arrest him upon reasonable and probable grounds of suspicion." This was a codification of the pre-existing law, and not the result of a statute laying down a new rule. While municipal ordinances are in a sense laws, and, for some purposes, proceedings to punish for a violation of them are treated as quasi criminal proceedings, such breaches are neither misdemeanors nor felonies under the laws of the State. It has been held that in municipal courts dealing with breaches of ordinances a trial by jury is not necessary; and various other differences between infractions of such regulations and violations of State laws have been recognized. This section of the code does not authorize a private person to arrest for every breach of a municipal ordinance which may take place in his presence, regardless of whether it involves the commission of a misdemeanor or felony, such, for instance, as expectorating on the sidewalk, using an ash-can or a garbage-can not in strict accord with the municipal requirements, or even indulging in whistling or singing which the self-consti-

tuted arrester might think was too loud.  To permit every person who might feel so inclined to arrest every other person whom he might consider to be violating some petty municipal regulation would be more calculated to produce disorder than to quell it. Statutes allowing arrests by private individuals, when not called upon by proper authority to act, should be strictly rather than liberally construed, as in derogation of the common law protecting the liberty of the citizen.  The code section last above quoted was dealing with offenses amounting to a misdemeanor or a felony, and not with infractions of municipal ordinances as such.  In order to work so radical a result as to allow private individuals to make arrests for all violations of municipal ordinances, the legislative intent to do so should be plain.  Union Depot & Railroad Co. *v.* Smith, 16 Colo. 361 (27 Pac. 329); Palmer *v.* Maine Central R. Co., 92 Me. 399 (42 Atl. 800, 44 L. R. A. 673, 675, 69 Am. St. R. 513); Voorhees on Arrest, § 112 et seq.

Generally a person about to be arrested is entitled to know that he is arrested by lawful authority, and, if he submits to the arrest, he has a right to know the ground of his arrest.  Voorhees on Arrest, § 78 et seq.; *Davis* v. *State, 79 Ga. 767* (4 S. E. 318). But there are limitations upon this rule.  Thus in *Thomas* v. *State, 91 Ga. 204* (18 S. E. 305), it was held that one who saw an officer approaching him and took to flight, and continued to flee, had no right to express information that the purpose of the officer was to arrest him.  Where an officer without a warrant attempted to make an arrest for a misdemeanor, and the person sought to be arrested had no notice that an attempt to arrest him was being made by lawful authority, it was held that such person had the right to resist the attempt to take him into custody.  *Franklin* v. *Amerson, 118 Ga. 860* (45 S. E. 698).  Notice of the official character of a person making the arrest, if an officer, and that an attempt to arrest is being made, may be express or implied.  *Robinson* v. *State, 93 Ga. 77* (3), 90 (18 S. E. 1018, 44 Am. St. R. 127); *Croom* v. *State, 85 Ga. 718, 723, 724* (11 S. E. 1035, 21 Am. St. R. 179). " A citizen unlawfully arrested has a right to resist force with force proportioned to that being used to detain him."  *Coleman* v. *State, 121 Ga. 594* (6), 599 (49 S. E. 716).  An unlawful arrest is an assault; the manner in which it is made may make it an assault and battery or a graver offense.  If no more than proper force is used

by the person sought to be illegally arrested, in resistance thereof, he is guilty of no offense. This does not mean that the mere fact of an illegal arrest will authorize the person arrested to slay the arrester. The latter may be guilty of such conduct as to increase the wrong from a mere assault or assault and battery to a felonious assault, and render it really or apparently necessary for the person wrongfully sought to be arrested to slay the aggressor. The case is somewhat analogous to other cases of assault culminating in the homicide of the person who was the original assailant. Generally to slay a person who without authority of law is seeking to make an arrest for a misdemeanor, where the motive of the slayer is merely to avoid an arrest, would be manslaughter, and not murder. If a person, with due notice of the facts, kills another to prevent the latter from lawfully arresting him in a lawful way, the crime is murder. *Williford* v. *State,* 121 *Ga.* 173 (48 S. E. 962).

In the instant case the evidence introduced on behalf of the State tended to show that the accused was guilty of murder. The defendant introduced no evidence, but made a statement, reciting, among other things, the following: He and his brother were walking down the sidewalk together, when they met a man who walked up to them and caught hold of them. The man had on citizen's clothes, and the defendant did not know what he was. He told them to come with him, and he carried them a short distance down the street. The defendant said to him, "Boss man, I would a whole lot rather you would tell me where you are going with us," and also, "What do you mean anyway?" The man made no reply except, "It don't know [make] any difference; you all come on." He carried them past a barber-shop and motioned for some one to come out, in response to which another man came out of the shop. A proposal was made to search the defendant and his brother, and they began to do so. The man who made the arrest had no warrant, and the defendant did not think that he had the authority to do what he was doing. The defendant jerked loose. As he did so the man reached back for his pistol, and started to draw it. The defendant secured his first and fired. This occurred in the town of Broxton. The defendant had heard it described as "a rough place." He was a stranger there, and did not know anything about the people. He did not know anyone, and thought probably, from the appearance of things, that they would kill him and his brother.

The man killed did not tell the defendant that he had a warrant for him, or wanted to take him to the lockup, or anything like that. The defendant was only trying to protect himself the best he could. He did not think it right to let them "just do me anyway there." When the man who had hold of him reached back for his pistol, the defendant knew that the purpose was to kill him, and he shot accordingly.

Evidence was introduced by the State to show that the person killed was a police officer of the town of Broxton; that he had on no uniform, but did have on a policeman's badge. He wore a raincoat, but there was evidence tending to show that it was turned back so that the badge was visible. An ordinance of the City of Broxton was introduced, which declared punishable by fine or imprisonment several specified acts, among them being intoxication to any degree, immoral or indecent conduct, and any disorderly conduct, or conduct likely to disturb the peace and tranquillity of any citizen.

The judge charged generally: "I charge you that an officer or a private person may make an arrest for an offense committed in the presence of the officer, or the person, without the necessity for procuring a warrant." He nowhere made any distinction between the power of a police officer and a private person in regard to making an arrest for the violation of a municipal ordinance. In a note to one of the grounds of the motion for a new trial he certified that the State at no time contended that the arrest was legal because made by an officer, but that the legality of the arrest depended solely on whether an offense was being committed by the defendant in the presence of the deceased, and not whether the deceased was uniformed, or whether the person killed was in fact an officer. Nevertheless, evidence was introduced, as above stated, on the subject of whether the person killed was an officer, and whether he wore a policeman's badge so as to be visible to the defendant.

It was urged in this court by counsel for the State that the defendant, when arrested, was guilty of violating the municipal ordinance, and was also guilty of a misdemeanor under the Penal Code (1910), § 442. That section declares it to be a misdemeanor for a person to "be and appear in an intoxicated condition on any public street or highway," or in certain other places; but it also declares that such intoxication "must be made manifest by boister-

ousness, or by indecent condition or acting, or by vulgar, profane, or unbecoming language, or loud and violent discourse of the person or persons so intoxicated or drunken." It will be seen that to be guilty of the misdemeanor thus defined by the code requires something more than is necessary to constitute a violation of the ordinance of Broxton. Under the former the drunkenness must be made manifest in one or more of certain specified ways. If reliance was placed upon the contention that the defendant was committing the offense thus defined, in the presence of the deceased, regardless of the official position of the latter, that raised a different question from whether he was violating a municipal ordinance. The judge nowhere drew this distinction. While a number of the grounds of the motion for a new trial were without merit, yet some of them sufficiently raised the point that the judge in fact charged to some extent on the subject of an arrest and an illegal arrest, but did not sufficiently or clearly instruct the jury on the issues involved in the case touching those subjects. In so far as the defendant depended upon his statement alone as a basis for a charge, he should have made a proper request, or the omission to so charge will not cause a reversal. But as the questions whether or not the deceased was lawfully attempting to arrest the accused, or whether the accused was resisting an illegal arrest, were involved, and as evidence was introduced to show the official character of the deceased and tending to show notice thereof to the accused, and an ordinance of the City of Broxton was introduced, the charge should have given proper instructions on those subjects.

A section in the charter of Broxton declares that "The chief and police shall be uniformed and armed as to be readily recognized by the public as a peace officer. Such arms and uniforms to be furnished by the city and to remain the property of the city." Acts 1904, p. 368-377. This section primarily imposes a duty upon the city. It might be considered in connection with evidence as to whether the person seeking to make the arrest was in uniform or not, as bearing on the question whether or not the defendant knew or was put on notice of the fact that such person was an officer. But the request to charge that it was the duty of the deceased while acting as chief of police of Broxton to be uniformed and armed, so as to be readily recognized by the public as a peace officer, was too broad in its terms.

. 4. ` Except as indicated in this opinion, there was no merit in
any of the grounds of the motion for a new trial. The ninth
ground is covered by the decision in *Coleman* v. *State,* 141 *Ga.* 731
(82 S. E. 228). As the case is to be returned for a new trial, we
express no opinion in regard to the evidence further than what has
already been said.

*Judgment reversed. All the Justices concur, except Fish, C. J.,
absent.*