## 66522. WALKER v. BISHOP.
## 66523. GEORGIA KRAFT COMPANY et al. v. BISHOP.

Per curiam.

This action arose out of events related to a labor strike called by Laborers' International Union Local 246 against a Georgia Kraft Company plant in Meriwether County. The plaintiff, Landis Ray Bishop, was a union steward and striking employee at the time the

events took place, whereas defendant Walker was a non-striking employee. On November 28, 1979, Bishop went to Walker's residence in the company of another striking employee to discuss Walker's nonparticipation in the strike. Walker asserts that Bishop threatened him and used abusive language in the presence of his family during this confrontation, while Bishop denies these allegations. Walker further alleges that some unknown person fired a shotgun outside his house at approximately 2:00 a.m. that night.

The following morning, Walker met with Georgia Kraft's plant manager, Garnett McCollum, who had already been informed of Walker's confrontation with Bishop the previous night and had telephoned the sheriff regarding the need to put an end to the "violence" connected with the strike. After discussing the situation with Walker, McCollum drove him to the sheriff's office to enable him to obtain a warrant for Bishop's arrest. Walker first talked with the sheriff and then related his version of the events of the previous evening to a justice of the peace. The latter responded by issuing a peace warrant against Bishop, as well as warrants charging Bishop with aggravated assault and making terroristic threats, both of which are felonies. Bishop was arrested later that morning upon his arrival at the picket line and was released approximately two hours later after posting a property bond. Later that day, Georgia Kraft filed an action for damages and injunctive relief against the union, Bishop, and several other striking employees, based on their alleged use of violence and threats of violence in connection with the strike. Georgia Kraft was granted a temporary restraining order in that suit the same day.

On March 18, 1980, the district attorney decided against seeking an indictment against Bishop and dismissed all of the warrants against him. In August of that year, Georgia Kraft voluntarily dismissed Bishop as a defendant in the civil suit without prejudice. Bishop subsequently commenced this action against Georgia Kraft, McCollum, and Walker, to recover damages for malicious arrest and malicious prosecution. (He also sought damages for libel, slander, and intentional infliction of emotional distress but later dismissed those claims.) Walker counterclaimed for damages for intentional infliction of emotional distress, invasion of privacy, and trespass. Following a jury trial, Bishop was awarded compensatory damages in the amount of $175,000 against Georgia Kraft, $500 against McCollum, and $100 against Walker, plus punitive damages in the amount of $4,000,000 against Georgia Kraft and $500 against McCollum. Walker received nothing on his counterclaim. In this appeal, the defendants enumerate 20 alleged errors. *Held:*

1. The trial court erred in refusing to direct a verdict in favor of

the defendants as to the malicious prosecution claim, as there was no evidence that the criminal charges against Bishop were brought before a committing court, grand jury, or other tribunal following his arrest.

"A right of action is given by our code [OCGA § 51-7-40 (Code Ann. § 105-801)] only for 'a criminal prosecution maliciously *carried on.*' . . . [A]ny criminal proceeding or action had, which is not carried to the extent of having an inquiry before a committing court, is not sufficient to sustain an action to recover damages for a malicious prosecution . . . The suing out of a warrant maliciously and without probable cause is a wrong; but whatever redress the person charged may have, it is not by an action to recover damages as for a malicious prosecution . . . [U]nder our statute, where this right of action is only given where such prosecution is carried on, the affidavit made for the purpose of having a warrant issued, though false, and made as the result of malice, and without any cause, will not serve as a proper foundation for this suit. Even if the warrant issued, and the party was arrested, this, without more, would not be sufficient cause for such an action. The party aggrieved would have a right of action for malicious [or false] arrest, as is provided by the Civil Code in another section." *Swift v. Witchard,* 103 Ga. 193, 196-197 (29 SE 762) (1897). Accord *Smith v. Embry,* 103 Ga. App. 375, 380 (119 SE2d 45) (1961).

2. While apparently conceding that the evidence was sufficient to create a jury issue as to false or malicious arrest, see generally OCGA § 51-7-1 et seq. (Code Ann. § 105-1001 et seq.), the defendants contend that Bishop was barred from asserting this cause of action because (a) he failed to assert it by counterclaim in the prior civil action which Georgia Kraft had brought against him and (b) he voluntarily abandoned it during his closing argument. We shall address these contentions *seriatim.*

(a) "A pleading shall state as a [compulsory] counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." OCGA § 9-11-13 (a) (Code Ann. § 81A-113). "The term 'occurrence' or 'same transaction' has been given a broad and realistic interpretation by the courts. Thus, the test to be applied in determining whether a counterclaim is compulsory is whether there is a logical relationship between the claim advanced by the plaintiff and the claim asserted by the defendant. 2 Kooman, Federal Civil Practice 158, § 13.10. Any claim that is logically related to another claim that is being sued on is properly the basis for a compulsory counterclaim. (Cit.)" *P & J Truck*

*Lines v. Canal Ins. Co.,* 148 Ga. App. 3, 4 (251 SE2d 72) (1978). See also *Myers v. United Services Auto. Assn.,* 130 Ga. App. 357 (203 SE2d 304) (1973).

It is clear that at least one of the occurrences which formed the basis of Georgia Kraft's civil suit was the encounter between Bishop and Walker which gave rise to the various criminal charges at issue in the suit before us now. However, even assuming that Bishop was therefore required to assert his claims against Kraft in a counterclaim to Kraft's suit, it does not follow that his failure to do so constitutes a bar to the present action.

The reason that a failure to assert a compulsory counterclaim may operate to bar the subsequent assertion of that claim in a separate suit is because of the application of the doctrine of *res judicata.* See generally *P & J Truck Lines v. Canal Ins. Co.,* supra at 5; *Leggett v. Gibson-Hart-Durden Funeral Home,* 123 Ga. App. 224, 225 (180 SE2d 256) (1971). The doctrine of *res judicata* is set forth in OCGA § 9-12-40 (Code Ann. § 110-501) as follows: "A judgment of a court of competent jurisdiction shall be conclusive between the same parties and their privies as to all matters put in issue or which under the rules of law might have been put in issue in the cause wherein the judgment was rendered until the judgment is reversed or set aside."

As previously indicated, when Georgia Kraft voluntarily dismissed Bishop from its civil suit in August of 1980, it did so without prejudice. Thus, insofar as Bishop is concerned, no judgment was ever entered in that case, and no issues were ever adjudicated. Cf. *Page v. Holiday Inns,* 245 Ga. 12 (262 SE2d 783) (1980). It follows that the doctrine of *res judicata* cannot operate to bar his assertion of the malicious arrest claim in this lawsuit.

(b) Although Bishop's counsel informed the jury during closing argument that bishop had abandoned his claim for damages for malicious arrest and was seeking recovery solely for malicious prosecution, this statement was evidently based on a previous ruling by the trial court, prompted by a defense motion for directed verdict, requiring him to elect between these two causes of action. Because Bishop's counsel responded to the court's ruling by stating that he would elect to proceed under the malicious prosecution theory, the court directed a verdict against him as to the malicious arrest claim and informed him that the jury would not be charged on that theory of recovery. Later, however, the defendants changed their position as to whether Bishop should be required to elect between the two theories, and the trial court accordingly announced that the jury would be instructed as to both. Under these circumstances, the statement made by Bishop's counsel during closing argument to the effect that Bishop was seeking recovery solely for malicious

prosecution cannot reasonably be construed as a voluntary dismissal or abandonment of the malicious arrest claim. Rather, it appears very likely that counsel made the statement under the erroneous belief that he was still bound by his prior, court-ordered election. Thus, we cannot agree that the statement had the legal effect which the defendants ask us to attribute to it.

3. The verdict improperly sought to apportion damages against persons sued as joint tortfeasors. "Georgia follows the common law rule against apportionment of damages among joint and several tortfeasors except where, under the provisions of *Code* § 105-2011 [OCGA § 51-12-31], the statute law sanctions such apportionment in cases involving trespasses to property. [Cits.]" *Craven v. Allen,* 118 Ga. App. 462 (b) (164 SE2d 358) (1968). It has often been held that a verdict which seeks to apportion damages among joint tortfeasors in violation of this rule is "illegal." See, e.g., *McCalla v. Shaw,* 72 Ga. 458 (1884); *Hunter v. Wakefield,* 97 Ga. 543 (25 SE 347) (1895); *Glore v. Akin,* 131 Ga. 481 (62 SE 580) (1908); *Craven v. Allen,* supra, at 462. (Apportionment of punitive or exemplary damages among joint tortfeasors is also prohibited, and, as a result, evidence which might otherwise be admissible to show a particular defendant's financial worth may be rendered inadmissible in a case with multiple defendants. See *Hodges v. Youmans,* 129 Ga. App. 481, 487-488 (200 SE2d 157) (1973)).

While Bishop concedes that the attempt to apportion damages renders the verdict in this case technically improper, he contends that the defect is one of form rather than substance and that the defendants waived this objection by failing to interpose it at trial, either at the time the verdict document was prepared for the jury's consideration and sent to the jury room or at the time the verdict was rendered. We are inclined to agree with this argument, particularly since the improper apportionment of damages among joint tortfeasors ordinarily would inure to the detriment of the plaintiff and to the benefit of the tortfeasors, each of whom would otherwise be liable for the entire amount of the verdict. See generally 74 AmJur2d Torts § 79, pp. 687-688. However, this is not an appropriate case in which to resolve the issue, since other considerations will require the reversal of the judgment in any event, and the problem is not one which is likely to reoccur upon retrial of the case.

4. The trial court erred in allowing three law enforcement officers called by the plaintiff to offer "expert opinion" testimony to the effect that probable cause did not exist for bringing the criminal charges against him. Expert opinion on an ultimate factual issue in a case is admissible only if it concerns a conclusion which the jurors would not ordinarily be able to draw for themselves, "i.e., the

conclusion is beyond the ken of the average layman." *Smith v. State,* 247 Ga. 612, 619 (277 SE2d 678) (1981); *Sinns v. State,* 248 Ga. 385 (283 SE2d 479) (1981). Clearly, the question of whether Walker had probable cause to believe Bishop had threatened and assaulted him was not beyond the ken of the average layman.

5. For this same reason, the trial court erred in allowing opinion testimony on the issue of whether Georgia Kraft had pressured or influenced Walker to take out the warrants.

6. The trial court did not err, however, in allowing a former assistant district attorney to testify that the charges against Bishop had been dismissed for lack of evidence. This testimony did not constitute an opinion as to whether probable cause existed for bringing the charges but was merely an explanation of how the dismissal of the charges came about. Not only does this testimony appear to have been relevant and proper, it does not appear that the defendants objected to it.

7. The trial court did not err in refusing to admit into evidence the complaint, answer, temporary restraining order, and interlocutory injunction from the record of the civil suit which Georgia Kraft had brought against Bishop, the union, and others. Although one of Bishop's contentions at trial was that Georgia Kraft had sought his arrest in order to strengthen its position in that litigation, the content of the documents in question was not in dispute. Furthermore, to the extent that the pleadings and affidavits from the suit might have supported Kraft's position that its actions were motivated by a bona fide desire "to stop the rampant violence" allegedly associated with the strike, they constituted nothing more than self-serving allegations and inadmissible hearsay.

8. The defendants complain that plaintiff's counsel prejudiced their case by repeatedly making denigrating remarks concerning both the integrity of defense counsel and the manner in which the defense was being conducted and that the trial court erred in "failing to control the conduct of plaintiff's counsel" or "to rebuke counsel properly when requested and when the situation demanded such a rebuke . . . "

" '[W]hat has transpired in a case from its inception to its conclusion, and the conduct of the party or his counsel with respect to the case is the subject of legitimate comment,' " *Miller v. Coleman,* 213 Ga. 125, 130 (97 SE2d 313) (1957), citing *Adkins v. Flagg,* 147 Ga. 136 (2a) (93 SE 92) (1917). Even where the conduct of counsel exceeds the bounds of propriety, the trial judge is vested with a broad discretion in determining whether to grant a mistrial, and his ruling will not be disturbed unless it appears that his discretion was manifestly abused. *McCluskey v. American Oil Co.,* 225 Ga. 63, 64

242

(165 SE2d 830) (1969). See generally OCGA § 9-10-185 (Code Ann. § 81-1009).

Although some of the references to defendants' counsel may indeed have exceeded the bounds of propriety, we do not find them so outrageous or prejudicial as to have required the grant of a mistrial. Neither, apparently, did the defendants, for we are cited to no instance in which they moved for a mistrial or otherwise expressed dissatisfaction with the corrective actions taken by the trial court in response to their objections. See generally *Purcell v. Hill,* 220 Ga. 663, 664 (141 SE2d 152) (1965).

9. The defendants further contend that the trial court committed reversible error by repeatedly expressing or intimating opinions concerning the evidence adduced at trial. See generally OCGA § 9-10-7 (Code Ann. § 81-1104). However, we are cited to no instance in which defense counsel objected or moved for a mistrial on this ground, and it is axiomatic that in the absence of an objection or motion for mistrial, an appellant cannot complain on appeal that he was prejudiced by such alleged conduct. See *Myrick v. State,* 155 Ga. App. 496, 498 (271 SE2d 637) (1980); *Mitchell v. Gay,* 111 Ga. App. 867, 874 (8) (143 SE2d 568) (1965). Furthermore, in none of the instances cited to us did the trial judge in fact express any opinion as to what had or had not been proved. At most, his responses to certain witnesses may have, on occasion, betrayed a feeling that their testimony was not relevant to the issues being tried or not responsive to the questions being asked.

10. The trial court did not err in charging the jury that it could hold Georgia Kraft liable for Walker's actions if it concluded that the company had expressly authorized or ratified those actions. The testimony of the defense witnesses notwithstanding, there was evidence from which the jury could reasonably have inferred that Walker's decision to take out the warrants was influenced by Georgia Kraft employees, acting on behalf of the company and within the scope of their employment. See generally *Planters Cotton Oil Co. v. Baker,* 181 Ga. 161 (181 SE 671) (1935); *Davison-Paxon Co. v. Norton,* 69 Ga. App. 77, 80 (2) (24 SE2d 723) (1943).

11. The trial court erred in charging the jury that a corporation is not relieved of liability because of any limitations on the powers of its officers which may be contained in its articles of incorporation or its by-laws, as there was no evidence of any such limitations in Georgia Kraft's articles of incorporation or by-laws. However, there appears to be no reasonable possibility that this error could have affected the outcome of the trial.

12. The trial court did not err in failing to give the defendants' requested charge that its verdict could not be based on speculation,

conjecture, or guesswork. While such a charge may be appropriate with reference to claims for special damages or attorney fees (see, e.g., *Studebaker Corp. v. Nail,* 82 Ga. App. 779, 785 (62 SE2d 198) (1950); *Bennett v. Assoc. Food Stores,* 118 Ga. App. 711 (2) (165 SE2d 581) (1968); *Development Corp. of Ga. v. Berndt,* 131 Ga. App. 277 (205 SE2d 868) (1974); *Davis v. Fomon,* 144 Ga. App. 14 (240 SE2d 581) (1977)), it is not appropriate in a tort action such as this, wherein the only damages sought are general and punitive damages. See generally *Wilborn v. Elliott,* 149 Ga. App. 541, 542 (4) (254 SE2d 755) (1979); *Progressive Life Ins. Co. v. Doster,* 98 Ga. App. 641 (7) (106 SE2d 307) (1958).

13. We do not reach the defendants' contention that the award of $4,000,000 in punitive damages was excessive, since the judgment of the trial court is being reversed on other grounds.

14. The defendants' remaining enumerations of error are either rendered moot by the foregoing or concern matters which are unlikely to reoccur upon any retrial of the case.

*Judgment reversed. Deen, P. J., Banke and Carley, JJ., concur. Banke, J., also concurs specially.*

DECIDED NOVEMBER 18, 1983 —
REHEARINGS DENIED DECEMBER 7, 1983 —

*Claude A. Bray, Jr., John M. Taylor, Eugene G. Partain, R. Carl Cannon,* for appellant (case no. 66522).

*W. Gordon Hamlin, Jr., M. Kathryn O'Shields, Eugene G. Partain, R. Carl Cannon, John M. Taylor, A. Paul Cadenhead, E. Clayton Scofield III, Claude A. Bray, Jr.,* for appellants (case no. 66523).

*James E. Butler, B. Randall Blackwood,* for appellee.

BANKE, Judge, concurring specially.

Although the defendants raise no attack on the award of $175,600 in compensatory damages, I find no evidence whatsoever to suggest that Bishop suffered any physical injury or pecuniary loss as a result of the defendant's actions. This award was evidently based on the trial court's charge to the jury that they could award compensatory damages for "emotional pain and distress, mental anxiety, humiliation, inconvenience, annoyance, embarrassment, and fear of loss or reputation" in addition to punitive damages for deterrence.

"Where there is a physical injury or pecuniary loss, compensatory damages include recovery for accompanying 'mental

pain and suffering' even though the tortious conduct complained of is merely negligent ... If 'mental pain and suffering' is not accompanied by physical injury or pecuniary loss, recovery is allowed only if the conduct complained of was 'malicious, wilful, or wanton.'" *Westview Cemetery v. Blanchard,* 234 Ga. 540, 543, 544 (216 SE2d 776) (1975), citing *Johnson v. Morris,* 158 Ga. 403 (123 SE 707) (1924). In the latter event, such damages are, of course, considered punitive or exemplary rather than compensatory. See *U. S. Shoe Corp. v. Jones,* 149 Ga. App. 595 (8) (255 SE2d 73) (1979).

A plaintiff who has suffered no physical injury or pecuniary loss may assert a claim for punitive damages in one of two ways: (1) He may seek nominal damages for the tort and "additional damages for aggravating circumstances" pursuant to OCGA § 51-12-5 (former Code Ann. § 105-2002), or (2) he may recover damages for injury to his "peace, happiness or feelings" pursuant to OCGA § 51-12-6 (former Code Ann. § 105-2003). See *U. S. Shoe Corp. v. Jones,* supra at Division 9. Where the plaintiff seeks "additional damages for aggravating circumstances" pursuant to OCGA § 51-12-5 (Code Ann. § 105-2002), he may obtain a recovery either to compensate him for his "wounded feelings" or for deterrence of the wrongdoer, but not both, *Westview Cemetery v. Blanchard,* supra at 544. See also *Johnson v. Morris,* supra. Oddly enough, no such restriction applies to damages awarded for injury to the "peace, happiness, or feelings of the plaintiff" pursuant to OCGA § 51-12-6 (Code Ann. § 105-2003). According to *Westview Cemetery,* supra at 546, that statute "permits the jury to consider both circumstances relevant to compensation for the extent of the injury and circumstances relevant to deterrence of the wrongdoer." In addition, § 51-12-6 (Code Ann. § 105-2003) expressly permits consideration of the defendant's "wordly circumstances," something which is not permitted under § 51-12-5 (Code Ann. § 105-2002). See *Hodges v. Youmans,* 129 Ga. App. 481 (8), 486 (200 SE2d 157) (1973). See also *Bob Maddox Dodge v. McKie,* 155 Ga. App. 263 (3) (270 SE2d 690) (1980).

Bishop chose to seek punitive damages for deterrence pursuant to OCGA § 51-12-5 (Code Ann. § 105-2002), and the trial court charged the jury accordingly. Having suffered no actual injury or pecuniary loss, he was thus precluded from seeking any form of "compensation" for the mental or emotional distress he may have suffered at the defendants' hands. Accord, *Woodbury v. Whitmire,* 246 Ga. 349 (3) (271 SE2d 491) (1980).

ON MOTION FOR REHEARING.

On motion for rehearing, the defendants contend that we have

overlooked two important arguments which they asserted in their briefs and enumerations of error, the first being that they were "insulated from liability because Walker made a full, complete and truthful recitation of the facts to the Justice of the Peace, who then independently decided to issue the warrants," and the second being that the trial court erred in refusing to charge that one of the warrants was invalid because it was not signed by a judicial officer.

The central factual issue in this case is whether the defendants acted maliciously and without probable cause to procure the plaintiff's arrest under process of law, and one of the key determinations which the jury must make in resolving this question is whether Walker's recitation of facts to the justice of the peace was in fact "full, complete, and truthful." Walker, of course, claims that it was, while Bishop claims that it was not. This court obviously is not the appropriate forum to resolve this factual conflict. As for the contention that one of the warrants was not valid because it was not signed, the defendants conceded in their briefs that this enumeration of error was relevant only to the malicious prosecution claim, arguing that the reason the alleged error was harmful to them was "because any arrest under an invalid warrant may give rise only to a potential cause of action for false arrest."

In the name of judicial economy, the defendants further urge us to reconsider our ruling in Division 2 that Bishop's failure to assert his false arrest claim as a counterclaim to Georgia Kraft's prior suit against him does not operate to bar the present action. Specifically, they argue that "[i]n an age in which litigation has exploded to such a point that the courts are backlogged and cannot dispense justice quickly, the courts ought to disfavor any rule which would permit the recurrence of two trials as lengthy as those which have already occurred . . ." It strikes this court that the defendants' concern for a prompt and expeditious resolution of this litigation has not previously manifested itself. As emphasized in Division 2, when Georgia Kraft dismissed its suit against Bishop, it chose to do so without prejudice to its right to reassert the claim at a later date. It will not now be heard to argue that this dismissal defeated Bishop's rights while not affecting its own.

*Motion for rehearing denied.*