A98A1152. TAYLOR v. GELFAND et al.
(505 SE2d 222)

BLACKBURN, Judge.

Pamela Taylor appeals the trial court's grant of summary judgment to Ross Gelfand, Gelfand's law firm, and General Motors Acceptance Corporation (GMAC) in a suit asserting claims for conversion and emotional distress arising from a garnishment action. We affirm.

"Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it,

in the light most favorable to the nonmovant. *Rice v. Huff*, 221 Ga. App. 592, 593 (472 SE2d 140) (1996)." *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

Viewed in this light, the evidence shows that GMAC retained Gelfand to collect its accounts. A written agreement between GMAC and Gelfand provided that Gelfand would "employ[ ] such lawful means, methods, and procedures as in [his] judgment and experience [he] believes will best effect the collection of Accounts." In January 1994, Gelfand undertook to collect money Taylor owed GMAC under a retail installment sales contract. Gelfand obtained a default judgment in the amount of $1,268.73. On June 7, 1994, after Taylor failed to make voluntary payments on the judgment, Gelfand filed a garnishment action in Spalding County against Taylor's employer, the Social Security Administration (SSA).

The SSA did not file an answer to the garnishment nor did it pay any money into the court registry. Rather, it issued Gelfand six checks drawn on a United States treasury account and made payable to the law offices of Ross Gelfand. Although Taylor's name was also noted on the checks, Gelfand testified that he believed the checks were employee withholding tax refunds he had been expecting and deposited them into his law firm's account. In December 1994, the SSA informed Gelfand that Taylor had been transferred out of state. Gelfand released the garnishment against the SSA and refiled in Pike County against a bank account Taylor had with the United Bank of Pike County. Although Gelfand believed the entire judgment remained unpaid when he filed this second garnishment, Taylor actually owed only $76.73.

In June 1995, GMAC terminated its relationship with Gelfand and referred its collection work to another law firm. In the meantime, Taylor filed a traverse to the second garnishment, contesting the amount owed. When the new firm learned of the traverse and Taylor's contention that the judgment had been satisfied, it released the second garnishment. Gelfand discovered his accounting error in August 1995 and remitted the SSA payments to GMAC.

1. In her brief, Taylor contends the trial court erred in granting summary judgment "on all theories of recovery" asserted in her complaint. However, Taylor conceded during the motion hearing that summary judgment was proper with respect to Counts 1 (false statements), 3 (fraud) and 5 (ethical violations) of the complaint. Taylor may not appeal that portion of the judgment to which she consented. *Dept. of Human Resources v. Phillips*, 268 Ga. 316, 320 (2) (486 SE2d 851) (1997). Moreover, because Taylor has presented no legal argument pertaining to the grant of summary judgment as to Counts 1, 3, and 5, any error assignable to those counts is deemed abandoned. Court of Appeals Rule 27 (c) (2).

2. In Count 2 of her complaint, Taylor claimed that Gelfand violated OCGA § 51-10-1 when he filed the second garnishment action because the resulting freezing of her bank account amounted to conversion. We disagree. "Conversion is the unauthorized assumption and exercise of the right of ownership over personal property belonging to another which is contrary to the owner's rights." (Punctuation omitted.) *Reeves v. Edge*, 225 Ga. App. 615, 619 (3) (484 SE2d 498) (1997). In this case, Taylor's bank account was temporarily seized by virtue of legal process. Consequently, the garnishment was not "unauthorized."

It has long been the law in Georgia "that possession acquired fairly under legal process, is not a wrongful conversion." *Smith v. Kershaw*, 1 Ga. 259, 261 (1846). Rather, when the "property of a person [was] seized under a valid process issued against him . . . malice, want of probable cause, and termination of the proceeding in favor of the defendant in the process [had to] be alleged and proved to support an action for damages against the persons causing the process to be issued and levied." *Fulton Grocery Co. v. Maddox*, 111 Ga. 260, 265 (36 SE 647) (1900). Thus, the overriding issue under these circumstances is whether Gelfand fairly took control of Taylor's bank account under legal process or engaged in abusive litigation in violation of OCGA § 51-7-81. Taylor's "simple allegations of conversion do not address this question, and the court is of the opinion that conversion will consequently not lie." *Analytical Systems v. ITT Commercial Finance*, 696 FSupp. 1469, 1475 (2) (N.D. Ga. 1986).

3. In Count 4 of her complaint, Taylor alleged intentional infliction of emotional distress. "The conduct complained of in support of a claim for intentional infliction of emotional distress must be extreme and outrageous. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and leave him to exclaim 'Outrageous!' . . . Whether a claim rises to the requisite level of outrageousness and egregiousness to sustain a claim for intentional infliction of emotional distress is a question of law." (Citation, punctuation, and emphasis omitted.) *Williams v. Stepler*, 227 Ga. App. 591, 594 (2) (490 SE2d 167) (1997). Reviewing the record in the light most favorable to Taylor, we find no evidence sufficient to give rise to such a claim. See *Ingram v. JIK Realty Co.*, 199 Ga. App. 335, 336-337 (1) (404 SE2d 802) (1991).

4. Taylor's claims against GMAC were premised upon a respondeat superior theory of liability. Because we find that Taylor has no claim against Gelfand, there is no liability to impute to GMAC. Moreover, because Taylor failed to show that GMAC, as Gelfand's client, either "expressly or impliedly authorized, knew of, or ratified" Gelfand's allegedly tortious performance of his duties as an attorney, she failed to show that liability could be imputed to GMAC on this basis.

838

*Plant v. Trust Co. of Columbus*, 168 Ga. App. 909, 910 (310 SE2d 745) (1983).

*Judgment affirmed. McMurray, P. J., and Eldridge, J., concur.*

DECIDED JULY 30, 1998 —
RECONSIDERATION DENIED AUGUST 12, 1998.

*Finch, McCranie, Brown & Thrash, Charles E. McCranie, William R. L. Latson*, for appellant.

*Troutman Sanders, Robert L. Pennington*, for Gelfand.

*McCullough & Payne, John G. McCullough, Ashley E. Sexton*, for GMAC.