### A00A2439. WAL-MART STORES, INC. v. JOHNSON.
(547 SE2d 320)

ELLINGTON, Judge.

Wal-Mart Stores, Inc. appeals from a jury verdict in favor of Polly Ann Johnson on her claims for false imprisonment, false arrest, malicious prosecution, assault and battery, and intentional infliction of emotional distress. Johnson's claims arose from a series of events beginning with a November 11, 1994 incident at a Wal-Mart store during which she was forcibly detained by store employees and ending with her trial in magistrate court for violating a municipal ordinance against causing a disturbance. In the bifurcated trial, the jury rendered a verdict against Wal-Mart, but not against three employees who were named as co-defendants, and awarded Johnson $155,000 in compensatory damages and $320,000 in punitive damages. Wal-Mart contends it is entitled to judgment in its favor, notwithstanding the verdict, or to a new trial on the following grounds: (1) the verdict against Wal-Mart but in favor of its three employees

was inconsistent and void; (2) claims for false imprisonment, false arrest, and malicious prosecution arising from a single transaction are mutually exclusive and cannot be presented to a jury together; (3) Wal-Mart's conduct did not rise to the level of outrageousness required for a claim for intentional infliction of emotional distress; (4) the trial court erred in not charging the jury on the definition of clear and convincing evidence in the first phase of the trial; (5) the trial court's charge on specific intent was erroneous; (6) Wal-Mart's conduct did not demonstrate a specific intent to harm as required for an award of punitive damages in excess of $250,000; and (7) the charge was not adjusted to the evidence. For the reasons which follow, we affirm on condition that the award of punitive damages be reduced to $250,000.

Viewed in the light most favorable to support the jury's verdict, the record reveals the following relevant facts: On the night of November 11, 1994, two Wal-Mart "loss prevention agents," Danielle Buck and Michelle Beck, were following a group of five black females, aged 15 to 23, who were suspected of shoplifting. The group of young women split up. Beck followed two of the young women out of the store, asked to speak to them about the merchandise, and brought them to a back office. The store's support manager, Suzanne Prather, instructed her staff via walkie-talkie, "the first black woman come out the store, grab her."

Meanwhile, Johnson, a 54-year-old black female, was approaching the exit after completing her shopping. Johnson herself was never suspected of shoplifting. Jamie Moore, a sales associate assisting Buck, ordered Johnson to "get on the floor." Moore admittedly did not seize Johnson because she was interfering in the shoplifting arrests. When Johnson questioned his reason for detaining her, Moore pulled her back into the store. Moore forced Johnson to the ground, hurting her knee, and held her down on the floor in a "tae kwon do stress hold" until a police officer arrived and put her in handcuffs. Prather saw Moore forcibly restraining Johnson and did not intervene. About 20 customers and employees were standing around watching.

Meanwhile, Beck had returned to the front of the store and gotten into a physical confrontation with one of the suspected shoplifters after making a racially derogatory remark. The security team brought the three remaining suspected shoplifters back into the store. Buck placed Johnson under citizen's arrest, accusing her of a state misdemeanor. Buck did not obtain an arrest warrant, despite stating it was her duty to do so on the "arrest by a private person" form. The responding officer arranged for Johnson to be transported to the hospital and cited her for violating a municipal ordinance, "[creating a] disturbance." A newspaper article reporting on the incident named Johnson as a suspected shoplifter.

Wal-Mart management decided to go forward with the ordinance violation charged against Johnson. Three months after the incident, Buck testified at Johnson's trial in municipal court on the ordinance violation. The municipal court acquitted Johnson.

Johnson filed suit against Wal-Mart, Beck, Buck, and Moore. Wal-Mart appeals from the verdict in her favor.

1. Wal-Mart contends its liability, if any, was entirely derivative of the liability of its employees under the doctrine of respondeat superior. Wal-Mart contends, therefore, that the jury's verdict, which assigned liability to Wal-Mart while assigning no liability to any of its three employees, was void and unenforceable. Wal-Mart's argument fails for two reasons.

First, Wal-Mart failed, before the jury was dismissed, to object to the verdict on the basis that it was inconsistent. Accordingly, Wal-Mart waived any objection that the verdict was inconsistent. *First Union Nat. Bank v. Boykin*, 216 Ga. App. 732, 735 (1) (455 SE2d 406) (1995).

Secondly, the jury was authorized under the evidence to find that Wal-Mart was derivatively liable through the actions of employees other than the three individual defendants (such as support manager Prather) or that Wal-Mart was directly liable, such as by ratifying the actions of its employees or by directing that the prosecution against Johnson be pursued. See *Taylor v. Gelfand*, 233 Ga. App. 835, 837-838 (4) (505 SE2d 222) (1998); *Walker v. Bishop*, 169 Ga. App. 236, 242 (10) (312 SE2d 349) (1983). Consequently, we find no merit to Wal-Mart's contention that it could be liable only if one of the three named employees was also liable. See *Overground Atlanta v. Dunn*, 191 Ga. App. 188, 190-191 (1) (381 SE2d 137) (1989).

2. Wal-Mart contends the trial court erred in denying its motion for directed verdict because "claims for false imprisonment, false arrest and malicious prosecution are[,] by nature, mutually exclusive," and, therefore, "a plaintiff can only proceed [before a jury] on one of these three (3) theories." "A directed verdict is appropriate only if there is no conflict in the evidence as to any material issue and the evidence introduced, construed most favorably to the party opposing the motion, demands a particular verdict. OCGA § 9-11-50 (a)." (Citation and punctuation omitted.) *Time Warner Entertainment Co. v. Six Flags Over Ga.*, 245 Ga. App. 334, 341 (1) (537 SE2d 397) (2000).

In this case, Johnson presented evidence sufficient for the jury to find that on the night of November 11, 1994, Wal-Mart personnel unlawfully detained her and deprived her of her personal liberty, purportedly on suspicion of shoplifting. Johnson was not arrested for shoplifting. Thus, Johnson presented a jury issue on her claim of false imprisonment under OCGA § 51-7-20. *Burrow v. K-Mart Corp.*, 166 Ga. App. 284, 287-289 (3) (304 SE2d 460) (1983).

Further, Johnson presented evidence sufficient for the jury to find that on the same night Wal-Mart personnel placed her under "citizen's arrest" without a warrant, maliciously and without probable cause, for the state misdemeanor of creating a disturbance. No formal charge was ever filed, however, which effectively dismissed the misdemeanor charge. Thus, Johnson presented a jury issue on her claim of false arrest under OCGA § 51-7-1. *Garner v. Heilig-Meyers Furniture Co.*, 240 Ga. App. 780, 781-782 (1) (525 SE2d 145) (1999); *Simmons v. Kroger Co.*, 218 Ga. App. 721, 722-723 (1) (463 SE2d 159) (1995). See OCGA §§ 51-7-2 (definition of malice); 51-7-3 (definition of lack of probable cause).

Finally, Johnson presented evidence sufficient for the jury to find that Wal-Mart prosecuted Johnson, maliciously and without probable cause, on the municipal disturbance ordinance and that the magistrate acquitted her. Thus, Johnson presented a jury issue on her claim of malicious prosecution under OCGA § 51-7-40. *Garner*, 240 Ga. App. at 781-782 (2); *Wilson v. Bonner*, 166 Ga. App. 9, 11-12 (1) (303 SE2d 134) (1983).

Johnson did not have to choose between her claims for false imprisonment, false arrest, and malicious prosecution because different conduct supported each claim: the initial detention on suspicion of shoplifting (false imprisonment), the citizen's arrest on a state misdemeanor (false arrest), and prosecution on the ordinance (malicious prosecution). Because there was some evidence as to each material issue and the evidence did not demand a verdict in favor of Wal-Mart, the trial court did not err in denying Wal-Mart's motion for directed verdict on Johnson's claims for false imprisonment, false arrest, and malicious prosecution.

3. Wal-Mart contends that the trial court erred in denying its motion for directed verdict as to Johnson's claim for intentional infliction of emotional distress in that its conduct did not as a matter of law rise to the level of outrageousness required for recovery. In this case, Wal-Mart personnel physically detained Johnson on suspicion of shoplifting simply because she was a black female. Despite confirming that Johnson was not involved with the group of shoplifters, Wal-Mart personnel insisted on arresting and prosecuting Johnson. Because Wal-Mart prosecuted Johnson, a newspaper article named her as a suspected shoplifter, holding her up for public ridicule.

The trial court did not err in concluding a rational and impartial jury could find that Wal-Mart's conduct met the requisite level of outrageousness and egregiousness to sustain a verdict for intentional infliction of emotional distress. *K-Mart Corp. v. Lovett*, 241 Ga. App. 26, 28-29 (3) (525 SE2d 751) (1999); *Sevcech v. Ingles Markets*, 222 Ga. App. 221, 224 (3) (474 SE2d 4) (1996).

4. Wal-Mart contends, because the jury was required to deter-

mine whether Johnson's claim for punitive damages was supported by clear and convincing evidence, the trial court erred in not charging the jury on the definition of clear and convincing evidence in the first phase of the trial. See OCGA § 51-12-5.1 (b). At the conclusion of the first phase of the trial, the trial court charged the jury as follows:

> [Punitive] damages cannot be imposed unless there is wilful misconduct, malice, fraud, wantonness, oppression or that . . . entire want of care which would raise the presumption of the conscious indifference to the consequences. Punitive damages may be awarded only in such tort actions in which those items are proven by clear and convincing evidence.

The trial court did not define the clear and convincing evidence standard despite defense requests. The jury returned a verdict awarding Johnson compensatory damages against Wal-Mart and making a finding that punitive damages were appropriate. The trial court immediately began the second phase of the trial for the jury to determine the amount of punitive damages. After Johnson introduced one exhibit and asked one witness five questions, the trial court instructed the jury on the law pertaining to punitive damages, including a definition of the clear and convincing evidence standard. The jury returned a verdict for punitive damages, specifically finding that Wal-Mart acted, or failed to act, with the specific intent to cause harm.

The trial court erred in failing to define the clear and convincing evidence standard at the end of the first phase of the trial before the jury applied that standard in determining whether punitive damages were appropriate. *H & H Subs, Inc. v. Lim*, 223 Ga. App. 656, 658-659 (2) (478 SE2d 632) (1996); *Gen. Motors Corp. v. Moseley*, 213 Ga. App. 875, 885 (8) (d) (447 SE2d 302) (1994). The jury, however, immediately had the opportunity to reconsider whether punitive damages were appropriate after receiving a charge including a definition of clear and convincing evidence. Under the unique circumstances of this case, we find Wal-Mart was not harmed by the incomplete charge because the overwhelming evidence showed wilful misconduct more than meeting the clear and convincing evidence standard of OCGA § 51-12-5.1 (b). See *Clarke v. Cotton*, 263 Ga. 861, 862 (440 SE2d 165) (1994).

5. Wal-Mart contends the trial court erred in denying its motion for directed verdict on Johnson's claim for punitive damages in excess of $250,000 because its conduct did not as a matter of law demonstrate a specific intent to harm as required for such an award under OCGA § 51-12-5.1 (f). We disagree. Johnson presented evidence sufficient for the jury to find that Wal-Mart personnel detained Johnson

without reason, causing her physical pain, outrage, and public humiliation, and compounded their offense by arresting and prosecuting her in retaliation for her objecting to the rough treatment and illegal detention or in an attempt to justify their actions. *K-Mart Corp. v. Hackett*, 237 Ga. App. 127, 131 (2) (514 SE2d 884) (1999). The trial court did not err in denying Wal-Mart's motion for a directed verdict.

6. Wal-Mart contends the trial court's charge on specific intent was erroneous. The court charged as follows:

> The term specific intent to cause harm . . . does. not require that plaintiff prove the defendant specifically intended to cause injury to the specific victim of the defendant's conduct. . . . Instead, if an individual does an act which has clearly foreseeable consequences and as a proximate result of that act, those consequences occur, then under the law, he is presumed to have intended those consequences. It is for you, the jury, to determine whether, under the existing circumstances and conditions, defendant has exhibited such a wilful and wanton and reckless disregard for human life and safety as to constitute the legal equivalent of specific intent to cause harm.

This charge was erroneous. A finding of specific intent to cause harm may *not* be based on the rebuttable presumption that a person of sound mind and discretion is presumed to intend the natural and probable consequences of his acts as set forth in OCGA § 16-2-5. *J. B. Hunt Transport v. Bentley*, 207 Ga. App. 250, 255 (2) (427 SE2d 499) (1992). Such an error in the charge of the court regarding the basis of an award of punitive damages is ordinarily presumed to be prejudicial and harmful, and we cannot find on this record that it was harmless. *Drug Emporium v. Peaks*, 227 Ga. App. 121, 126 (2) (a) (488 SE2d 500) (1997). Therefore, the judgment can be affirmed only on the condition that, within ten days from the date the remittitur of this Court is made the judgment of the trial court, Johnson agrees to strike therefrom the award of punitive damages in excess of $250,000; otherwise, the award of punitive damages is reversed. Id. at 131; *J. B. Hunt Transport*, 207 Ga. App. at 255 (2).

7. Wal-Mart's remaining enumerations of error have been considered, and each has been found to be abandoned, without merit, or moot.

*Judgment affirmed on condition. Andrews, P. J., concurs. Ruffin, J., concurs fully and specially.*

RUFFIN, Judge, concurring specially.

I concur fully with all that is said in the majority opinion. I write separately, however, because it appears from the transcript that peace officers may be misapprehending the nature of a citizen's arrest under Georgia law.

The evidence shows that Johnson was arrested by Danielle Buck, the Wal-Mart loss prevention agent on duty at the time of the incident. When Buck arrested Johnson, she completed a Wal-Mart form titled "ARREST BY PRIVATE PERSON." The form provides in part: "I have arrested . . . [Johnson] for a misdemeanor violation of the state law and request you, as a peace officer, to transport this person to the Winder City Jail. I understand that it is my duty to obtain an arrest warrant as quickly as possible." As stated by the majority, Buck never obtained a warrant, and Johnson was never prosecuted for the alleged state misdemeanor violation.

The officer who transported Johnson to jail repeatedly testified that Wal-Mart conducted a citizen's arrest, that all he did was transport Johnson, and that because Wal-Mart "didn't specify at the time if they wanted to make it a state charge or not," he issued Johnson a City of Winder citation for violating a local ordinance. It appears from the officer's testimony that he believed the Wal-Mart loss prevention agent had the option of arresting Johnson for committing either a state misdemeanor or violating a local ordinance. This is not the case.

Under Georgia law, "[a] private person may arrest an offender if the offense is committed in his presence or within his immediate knowledge."[1] However, because the Code section establishing this authority is in "derogation of the common law protecting the liberty of the citizen," it is strictly construed.[2] So construed, our Supreme Court has ruled that it authorizes arrest only for "offenses amounting to a misdemeanor or a felony [under state law], and *not* [for] infractions of municipal ordinances as such."[3]

Thus, it is clear that Wal-Mart's agent arrested Johnson for a state law misdemeanor violation because her authority extended only so far. As stated by the majority, Wal-Mart never obtained a warrant or otherwise pursued this state misdemeanor charge, and this supported the store's liability for false arrest. The transporting officer erroneously believed that Wal-Mart's loss prevention agent could, as a private citizen, arrest Johnson for violating a local ordinance. The agent had no such authority, but the transporting officer nevertheless charged Johnson with violating a local ordinance. Wal-

---

[1] OCGA § 17-4-60.
[2] *Graham v. State*, 143 Ga. 440, 445 (3) (85 SE 328) (1915).
[3] (Emphasis supplied.) Id.

Mart's pursuit of this latter charge supported a verdict for malicious prosecution.

Peace officers who comply with the citizen's arrest statute, act in good faith, and within the scope of their authority cannot be held liable for false arrest.[4] However, such officers, and civilians for that matter, should be cognizant that OCGA § 17-4-60 does not authorize a private citizen to arrest an offender for a municipal violation.[5]

DECIDED MARCH 14, 2001 —
RECONSIDERATION DENIED APRIL 11, 2001 

*McLain & Merritt, Albert J. Decusati*, for appellant.
*James A. Goldstein, Peter A. Law*, for appellee.