## BERKNER *v.* DANNENBERG *et al.*

1. Inasmuch as the answers filed deny the commission of an assault and battery of the kind and character alleged in the petition, and for which the plaintiff sought to recover damages, they can not properly be treated as pleas of justification, although they admit a battery of a minor character, and aver, as a justification of the battery as admitted, certain opprobrious words and abusive language spoken by the plaintiff to one of the defendants. But, treating the answers as pleas in extenuation and mitigation of damages, the trial judge committed no error in overruling a demurrer to the same.

2. The provision of our statute that opprobrious words or abusive language may justify an assault, or an assault and battery, is applicable only on the trial of one who has been indicted for either of these offenses ; and while on the trial of a civil action brought by one person against another, to recover damages for an assault and battery alleged to have been committed on the plaintiff · by the defendants, any such words and language may properly go to the jury, they are admissible only in extenuation or mitigation of damages, and not as a justification.    FISH, J., dissenting.

3. In an action to recover damages resulting from an assault and battery committed on the plaintiff, if there be aggravating circumstances either in the act or intention, punitive or exemplary damages may be recovered.

4. In order to entitle the defendant to the opening and conclusion before the jury under a plea of justification filed in an action to recover damages for the commission of a tort, the plea must admit the commission of the acts charged in the petition as they are therein alleged ; and a plea which only partially admits the commission of the acts charged is not a plea of justification, and does not entitle the defendant to the opening and conclusion of the argument.

Argued July 8, 1902. — Decided January 10, 1903.

Action for damages.    Before Judge Felton.    Bibb superior court. January 8, 1902.

The action was against Joseph and Simon Dannenberg and Isaac Block.  The petition alleged : (Paragraph 2) The defendants injured and damaged plaintiff in the sum of $20,000, by reason of the following facts :    On October 4, 1900, while plaintiff was peaceably and lawfully riding on a street-car, the defendants, without warning and without cause or justification, cruelly assaulted, beat, wounded, cursed, abused, and otherwise maltreated him, against the peace and dignity of the State, as hereafter set forth. (Paragraph 3) Each and all of the defendants beat plaintiff with their fists ; and Simon Dannenberg and Isaac Block cruelly kicked and beat him with their feet, upon which they had shoes with thick soles and heels.  Joseph Dannenberg also beat him with an umbrella,

and tried to stick the metal rod of the umbrella into his eyes or face, with the intention of stabbing, maiming, and seriously wounding him. (Paragraphs 4 – 11) All of the defendants at the same time assaulted and battered plaintiff, striking him many severe blows about the head, face, neck, arms, body, and legs, all the time beating him with great violence and knocking him down, and so beating him while down. Had it not been for the courage and interference of the conductor and motorman in charge of the car, the defendants would have inflicted more severe, and perhaps fatal, injuries upon him. While plaintiff was down as aforesaid, all the defendants seized him and, dragging him to the edge of the car, attempted to throw him off the car while it was in rapid motion, and shoved and kicked him with great force, thereby ejecting him from the car toward the ground ; but while he was falling the conductor caught him, and by a strenuous effort saved him from falling to the ground upon his head. The conductor called to them to cease their attacks on plaintiff, and they angrily demanded that the conductor put him off the car ; whereupon the conductor replied that he would not do so, because plaintiff had not done anything wrong and had a right to remain on the car. After the conductor had rescued plaintiff from the assaults of the defendants, and the beating had ceased, the conductor placed him on the front platform of car, which was away from the defendants. Very soon thereafter and suddenly, without warning or provocation, the three defendants again simultaneously assaulted plaintiff, and began to beat him with their fists. One of the defendants struck him a severe blow on the head, near the ear, with sufficient force to knock him down to the ground ; and while plaintiff was falling from the car, the motorman caught him, thus preventing him from striking the ground. Then Simon Dannenberg and Isaac Block jumped through the front window of the car and beat plaintiff down to the floor of the car, and kicked and beat him while on the floor, where they would have committed further serious, permanent injuries, which would probably have resulted fatally, had not the motorman and the conductor again rescued and protected him. While upon the front platform and being partially held up and supported by the motorman, Joseph Dannenberg attempted to strike, stab, and wound plaintiff with the steel rod of said umbrella, making frequent assaults and efforts to do so, and would have succeeded in injuring

plaintiff had not the motorman prevented by parrying the umbrella and catching the arm of said Joseph Dannenberg, which action caused said Joseph to attempt to strike the conductor. While plaintiff was on the front platform of the car, Simon Dannenberg drew a large pocket-knife, opened the blade, and attempted to cut, stab, and perhaps kill plaintiff with it, and would have done so had not the motorman prevented. Plaintiff was unarmed, and each of the defendants knew that he had no weapon. After said second distinct assaulting and beating, Joseph Dannenberg said in a loud voice to the passengers in the car, as an excuse for the wrongful treatment just inflicted on plaintiff, " This man denied to me owing a debt which he has owed me for the past nine years." Joseph Dannenberg then got off the car and went to the front, where Simon Dannenberg and Isaac Block were still trying to get to plaintiff to inflict further injuries upon him ; whereupon other passengers caused them to desist. During the entire time when the defendants were assaulting and beating plaintiff, he did not strike back, hit, or do anything in retaliation; or make a motion to do so. The petition contained further allegations as to injury and damage resulting from the acts complained of.

In the first paragraph of the answer, the defendants denied specifically the several allegations made in paragraph 2 of the petition, and added the following averments : On the contrary, defendants say that at said time the said Berkner (plaintiff) was drunk, while the defendants were peaceably riding on the car. Plaintiff was riding on the front seat of the car, and the defendants on a seat in his rear. Plaintiff left his seat and came around to where defendants were, and, obtrusively pushing himself in a seat beside defendant Joseph Dannenberg, began to quarrel in a most offensive manner with said Dannenberg, accusing said Dannenberg of treating him in an unjust manner more than three years before, in that he refused plaintiff credit. Said Dannenberg had no remembrance of the occurrence which seems to have given plaintiff offense, but, seeing that he was in an intoxicated condition, said to him in a peaceful and conciliatory manner, " Why, Henry, that was over three years ago. Let bygones be bygones. Let's not talk about that ; let's talk about something else," when plaintiff applied immediately to said Dannenberg, and in his face, a most vile epithet, calling him a " God damned son of a bitch," and at the same

time placing his hand upon his hip pocket as if to draw a pistol; and Simon Dannenberg, who was the son of said Joseph, and Isaac Block, his son-in-law, immediately seized plaintiff's hand to prevent his drawing a pistol and, in his intoxicated condition, possibly killing some passenger in the car. In the scuffle plaintiff was pushed to the floor, but no injury or damage was done to him, the whole purpose being to prevent his drawing a weapon. At this time the conductor or motorman came up and took plaintiff back to the seat which he had originally occupied. Plaintiff, immediately after he had been placed in his seat, turned again to said Joseph Dannenberg, and, gritting his teeth at him as if very angry, again applied said vile epithet to him, and the defendants, still not knowing that he did not have a pistol, immediately struck at and probably hit him, but this was only in self-defense, and to prevent a serious injury which they believed, in his intoxicated condition, he might inflict upon them. In the second paragraph the defendants denied specifically the several allegations of paragraph 3 of the petition, and averred that the only lick that Joseph Dannenberg gave plaintiff was to hit him slightly with the butt end of a light umbrella, immediately on his applying to him and in his face the words, "You are a God damned son of a bitch." The remaining allegations of the petition as set out above were denied. It was admitted that the defendants pushed plaintiff to the floor of the car, but it was averred that this was done in their efforts to defend themselves from his assaults and insults, and not for the purpose of doing him any hurt.

A demurrer to the answer was overruled, and the trial resulted in a verdict for the defendants. The plaintiff excepted to the overruling of the demurrer, and to the overruling of his motion for a new trial.

*Arthur L. Dasher*, for plaintiff.
*Hardeman, Davis, Turner & Jones*, for defendants.

LITTLE, J. An action to recover damages on the part of Berkner, for personal injuries which he alleged the defendants had inflicted on him, was tried, and there was a verdict for the defendants.

1. In his bill of exceptions the plaintiff in error alleges that the trial judge erred in overruling the demurrer which he filed to the pleas of the defendants. Evidently the main purpose of the de-

murrer was to call in question the sufficiency of the defendants' answers as pleas of justification.    We are of the opinion that the answers filed can not in law be treated as pleas of justification. The action brought by the plaintiff sought a recovery in damages for a tort, and the Civil Code, § 3891, declares that in every case of a tort, if the defendant was authorized by law to do the act complained of, he may plead the same as a justification.   The test, therefore, to which the answers are to be subjected to determine whether or not they can properly be classed as pleas of justification is, first, do the answers admit the battery as set out in the petition; second, do the matters set up as a reason for committing the battery, in law, authorize the defendants to commit the battery?   If the pleas be wanting in either of these particulars, they are not pleas of justification.    An examination of the answers discloses that they do not admit the assault and battery as charged in the petition.    In order to make a plea one of justification, it must plainly admit that the act as charged in the petition was committed by the defendant. Under such a plea there can be no issue between the parties as to whether the acts charged were committed by the defendant, but the only issue raised is whether the defendant was in law justified in doing the acts for which the plaintiff seeks redress.    The answers in this case therefore can not be considered as pleas of justification.    By the Civil Code, § 3892, it is declared that what does not amount to a justification may be pleaded in extenuation and mitigation of damages; and while much of the matter contained in the answers could well have been omitted, we are not aware of any reason why the answers should have been stricken, but, on the contrary, are of opinion that the matter which they contained could properly be pleaded in extenuation or mitigation of damages, under the code section just cited.   Those grounds of the demurrer not directed to the answers as pleas of justification do not raise issues of sufficient importance to cause the pleas to be stricken. Although much of the language and many of the expressions contained in the answers to which these grounds of the demurrer are directed are objectionable, and add no weight to the material averments of the plea, and should not have been set out, yet they can properly be treated as mere surplusage.

2. The motion for a new trial contains 35 grounds.    A careful examination of each of these, in connection with the brief of evi-

dence and the charge given to the jury, has resulted in the conclusion that the trial judge erred in overruling the motion for a new trial. The particular causes for a reversal of the judgment will be hereafter specifically set forth. In the meantime, however, a number of immaterial errors, set out in some of the grounds of the motion other than those particularly mentioned, appear to have been committed on the trial; but they are not of sufficient importance of themselves to work a new trial. These errors are found set out in the first, second, eighteenth, and other grounds which are indicated in what will be hereafter said. The grounds not thus indicated or specifically set out do not show the commission of error. In the fourteenth ground of the motion, error is assigned to the action of the court in instructing the jury as follows: " It is a rule of law in this State, laid down in the code, that in all cases of assault and battery (and the charge in this case on the part of the plaintiff is that the defendants did commit an assault and battery upon him, and the plea of the defendants admits that an assault and battery was committed on the plaintiff) the law permits, wherever an assault and battery is made, and an effort is made on the part of the person inflicting that assault and battery to justify, that is to say, to show that the person who inflicted the assault and battery was justified in that battery, the law says that the jury trying the case may have shown to them by the testimony any opprobrious words used by the person beaten to the person beating, by the person who inflicts the injury or battery or beating, in order that the jury trying the case may pass upon the question of whether or not the battery inflicted was disproportionate to the opprobrious words, if they were insulting words and opprobrious words, whether the battery inflicted was disproportionate to the words used." · The provisions of our code to which undoubtedly the trial judge had reference in this part of his charge are to be found in the Penal Code, § 103, which is in the following language: " On the trial of an indictment for an assault, or an assault and ·battery, the defendant may give in evidence to the jury any opprobrious words, or abusive language, used by the prosecutor, or person assaulted or beaten; and such words and language may or may not amount to a justification, according to the nature and extent of the battery, all of which shall be determined by the jury."

In terms the provisions of this section are only applicable in the

trial of one who is charged with the offense of assault, or assault and battery, and they have no applicability to a civil case, so far as they may be construed to allow the jury to find opprobrious words to be such a justification for an assault and battery as to prevent a recovery by the plaintiff. On the contrary, our Civil Code, § 3826, but declares the doctrine of the common law when it lays down the rule that " a physical injury done to another gives a right of action, whatever may be the intention of the actor, unless he is justified under some rule of law." The rule for measuring damages in such an action is stated (Civil Code, § 3905) in these words: " If the injury be small, or the mitigating circumstances be strong, nominal damages only are given." The suit here is to recover damages for physical injuries. The plaintiff is entitled, when he shows that these injuries were inflicted by the defendant, to recover nominal damages at least, unless the defendant on his part shows that he was justified, under the law, in the commission of the assault or battery, or both. As we have said, the rule that opprobrious words may, in the estimation of the jury, afford a justification of an assault and battery, is confined to the trial of one who is charged on the criminal side of the court with assault and battery as an offense against the laws of the State. At common law opprobrious words would never justify an assault or battery (*Berry* v. *State*, 105 *Ga.* 683), and we have no statute which makes such words a justification in a civil action. It must therefore be ruled that the charge complained of was error. While this is true, evidence of opprobrious words or abusive language may nevertheless properly go to the jury, not as proof of justification, but to be considered in extenuation and mitigation of damages which must be awarded, except in cases where the acts admitted or proved are justified. We know of no rule of law, when a physical injury is shown to have been intentionally inflicted, which bars the right of the injured person to at least recover nominal damages, when it appears that the only cause for the infliction of the injury was opprobrious words used by the person injured to him who caused the injury. We are, of course, dealing with the charge as set out in a ground of the motion, and can not be understood as intimating anything in relation to the other claim made by the defendants that what they did was in consequence of a belief on their part that the plaintiff was about to draw and use a weapon. The evi-

dence in relation to that and other circumstances is for the jury; but inasmuch as opprobrious words and abusive language will not of themselves free a person who actually committed an assault and battery from liability in an action for damages, it is not, we think, necessary to discuss or pass upon the question of the mutual rights of the father, son, and son-in-law to protect each other.

3. Another ground of the motion complains that the court erred in charging the jury that they were not authorized to consider the question of punitive damages, and that they were not authorized to find punitive damages for the plaintiff, but, if they should find damages for the plaintiff, their verdict should be for such damages " as will compensate him for the injury inflicted upon him, if such injury has been inflicted upon him, from which he still suffers, as well as such injuries suffered from time to time in the past, in the way of physical injury, as well as compensation for wounded feelings." We have not quoted in full the part of the charge complained of, because of its length, but we gather from it that the charge instructed the jury that in a case like this they were not authorized to find punitive damages. So construed, we think the charge was error. In the case of *Ratteree* v. *Chapman*, 79 *Ga.* 574, it was ruled by this court that under the law of this State, in actions for torts, when there are aggravating circumstances, the jury may give additional damages, either to deter the wrong-doer from repeating the trespass, or as compensation for wounded feelings. The action brought in that case was to recover damages for an assault and battery which the plaintiff alleged the defendant had inflicted on him; and in the case of *Parker* v. *Lanier*, 82 *Ga.* 216, which was an action to recover damages alleged to have been sustained by the plaintiff at the hands of the defendant in consequence of an assault and battery, this court expressly ruled that punitive damages as well as compensatory damages, might be awarded. Under these authorities it must be ruled that this part of the charge was error. We, of course, do not mean to be understood as saying or intimating that under the evidence in this case the jury should or should not have awarded punitive or exemplary damages. The plaintiff contended that the defendants, without cause or any mitigating circumstances, committed an aggravated battery on him. Whether they did so or not, whether there were aggravating circumstances or not, are all questions for the jury; but in the charge excepted to

the jury were instructed that they could not consider the question of punitive damages. As was said by Mr. Justice Simmons in *Ratteree* v. *Chapman*, supra, "Whatever may have been the dispute amongst text-writers and courts heretofore, as to this question, . . the legislature has settled it in this State;" and he then proceeds to quote from the Civil Code, § 3906, which declares, in effect, that where there are aggravating circumstances either in the act or in the intention, in the commission of a tort, the jury may give additional damages, either to deter the wrong-doer from repeating the trespass, or as compensation for the wounded feelings of the plaintiff. Under these rulings it must be held that the charge complained of was error.

4. It is further complained that the court erred in ruling, over the objection of the plaintiff, that the plea filed by the defendants in this case was a sufficient plea of justification to entitle the defendants to the opening and conclusion in the argument before the jury. It is not necessary for us to repeat what we have said above, that in our judgment the answers filed were not pleas of justification, but from what has been said on that point it is clear that the defendant was not entitled to the opening and conclusion, which has been ruled by this court to be an important right. This right is only secured when the plea admits the commission of the acts as they are charged in the petition. Such an admission is necessary to characterize the plea as one of justification, which alone authorizes the defendant to have the opening and conclusion. It was ruled in the case of *Ransone* v. *Christian*, 49 *Ga.* 491, construing the Civil Code, § 3891, which relates to pleas of justification, that under the law of this State a plea of justification, filed in a case of libel, admitted not only the publication but the manner of it as charged in the declaration. See also, to the same effect, *Ocean S. Co.* v. *Williams*, 69 *Ga.* 251. And in the case of *Seymour* v. *Bailey*, 76 *Ga.* 338, being a case wherein the plaintiff sought to recover damages because the defendant "with an ax-helve and with his fist gave and struck petitioner a great many violent blows," etc., it was held, "that it was not a sufficient plea of justification to allege that the plaintiff made an assault upon the defendant, and would have beaten and ill-treated him if he had not immediately defended himself against the plaintiff, and therefore he did a little beat, ill-treat, and wound the plaintiff necessarily

and unavoidably, and the plaintiff, by his assault, brought it upon himself;" and that the plea did not give the defendant the right to open and conclude before the jury. Under the plea filed in this case much of the matter alleged in the petition was not admitted, but was denied. The effect of a plea of this character is to still leave upon the plaintiff the burden of proving those allegations not admitted. Hence, the plea was not one of justification, and did not give to the defendants the right to open and conclude.

We have not, for want of time, been able to take up the grounds of the motion seriatim, but it is believed that the rulings herein made and the reasons assigned for the same cover all the material points made in the record.

*Judgment reversed. All the Justices concurring, except Lumpkin, P. J., absent, and Candler, J., not presiding.*

FISH, J. While I concur in the result reached by the court in this case, upon the other grounds dealt with in the opinion of the majority of the court, I respectfully dissent from the proposition laid down in the second headnote. It is undoubtedly true that under the common law opprobrious words or abusive language could not be pleaded in justification of an alleged assault and battery, either upon a criminal prosecution for the alleged offense, or in a civil suit for damages based upon the alleged tort; and it is also true that unless this principle of the common law, as applied to such a civil action, has been abrogated in this State by the statute (Penal Code, § 103), it still prevails. In my opinion, however, there is no escape from the conclusion that this principle of the common law was abolished in this State, both as to criminal and civil actions, when that statute was enacted. Under the common law, whenever a person could plead justification to an indictment for assault and battery, he could plead justification in defense to an action for damages based upon the same act. To an indictment for assault and battery he could plead that the alleged battery was committed in self-defense, and to a civil suit based upon the same act he could enter the same plea; and if he sustained it in the latter case, he was as much entitled to a verdict in his favor as he would be if he sustained it in the former. The same principle of justification applied in each case. The Civil Code, § 3891, provides: "In every case of tort, if the defendant was authorized by law to

do the act complained of, he may plead the same in justification." And section 3826 declares: " A physical injury done to another gives a right of action, whatever may be the intention of the actor, unless he is justified under some rule of law." Therefore, if, in a civil action for alleged assault and battery, " the defendant was authorized by law to do the act complained of, he may plead the same in justification;" and "a physical injury done to another" gives no right of action to the injured party, if the person inflicting the injury was "justified under some rule of law." The Penal Code, § 103, provides: " On the trial of an indictment for an·assault, or an assault and battery, the defendant may give in evidence to the jury any opprobrious words, or abusive language, used by the prosecutor, or person assaulted or beaten ; and such words or language may or may not amount to a justification, according to the nature and extent of the battery, all of which shall be determined by the jury." It seems to me clear that when, in a prosecution for assault and battery, opprobrious words or abusive language do amount to a justification of the beating, the person doing the beating "was authorized by law to do the act complained of," and that it therefore follows that in a suit for tort, based upon the same beating, he "may plead the same in justification." Clearly if, in a given case, opprobrious words, or abusive language, would, in a prosecution for assault and battery, amount to a justification for the particular beating inflicted, the person doing the beating "was justified under some rule of law." He would be justified under the rule of law laid down in the above-quoted section of the Penal Code, and, being justified under this rule of law, the physical injury which he inflicted upon the other party would give no right of action to the latter.

"Battery is the unlawful beating of·another." Penal Code, § 102. Therefore a beating which is lawful is, in the legal sense, no battery. A beating which is justifiable is a lawful beating. A lawful beating affords no cause of action to the person beaten. Opprobrious words or abusive language may, as we have seen, justify a beating, if, in the opinion of the jury trying the case, the beating was not disproportioned to the provocation given by such words. Where opprobrious words or abusive language do justify a beating, the beating is lawful, and, being lawful, no right of action can flow therefrom to the person beaten. In my opinion, it

will not do to say that a beating may be justifiable, and therefore lawful, when the State is prosecuting the beater for a violation of its criminal statute, and that the same beating is obliged to be unjustifiable, and therefore unlawful, when the person beaten is suing his assailant for damages alleged to have been sustained in consequence of the beating.    It can not be that the State, when it, by a prosecution for assault and battery, is seeking to protect the right of every law-abiding citizen to personal security, will justify one person for having beaten another, upon a ground which affords no justification whatever for the act complained of when the issue is between the person assaulted and beaten and his assailant. I can not believe that the State in a criminal case has one standard by which to measure the right to personal security, and in a civil case has another standard by which to measure the same right. The right for the protection of which the State enacted its criminal statute, and in vindication of which it brings its criminal prosecution, is the same right for the alleged violation of which the person beaten brings his action for damages.    And when the State, as the sovereign protector of the rights of its citizens, in a statute enacted for the purpose of protecting the right of personal security, provides that a given provocation may justify one person for assaulting and beating another, it impliedly declares that, under such circumstances, the right of the person assaulted and beaten to personal security has not been violated.    When one person is justified in striking another, he has the right to do so.    If he has the right to strike the blow, he can not, by striking it, violate any right of the person whom he strikes ; and unless some right of the person struck is violated by the blow, no right of action for damages can accrue to him therefrom.

For these reasons I am of opinion that the charge of the trial court, dealt with in the second division of the opinion of the majority of this court, was not an erroneous statement of the law.    I may add that while the precise question which I have been considering may not have been directly involved in *Tucker* v. *Walters,* 78 *Ga.* 232, it is very clear that this court, as then constituted, was of opinion that the provisions of our statute in reference to opprobrious words, or abusive language, as a justification for an alleged assault and battery, were applicable in a civil case.    There Tucker sued Walters for damages, for having stabbed him with a pocket

knife, and Walters's defense was that the stabbing was done in self-defense. The evidence showed that Tucker first assaulted and beat Walters. The plaintiff contended that the assault which he made on the defendant was justified by certain words which the latter used to him, which, in the manner and under the circumstances in which they were used, were opprobrious. The trial judge instructed the jury that the words in question, whether spoken in a mild, kind, or insulting manner, were not opprobrious words, and that the manner in which they were spoken could not make them so. The main ground of the motion for a new trial was that the court erred in this instruction; and this court held that the charge was erroneous, upon the ground that the question whether the words were opprobrious or not was one to be determined by the jury. Clearly, if the law in reference to opprobrious words as a justification for a beating does not apply in a civil suit for damages, the question whether the instruction to the jury was, abstractly, right or wrong was utterly immaterial, as, whether right or wrong, the plaintiff could not have been hurt by the charge given. Therefore, the fact that this court gravely considered and determined the question presented shows that it was of opinion that the provision, now contained in the Penal Code, § 103, with reference to opprobrious words, is applicable in a civil case.