A98A2420, A98A2421. K-MART CORPORATION v. HACKETT et al.; and vice versa.
(514 SE2d 884)

BLACKBURN, Judge.

K-Mart appeals the judgment in Case No. A98A2420, a tort action, in which liability was established by default judgment, following jury trial as to damages. K-Mart contends that the trial court erred in denying its motion to set aside default judgment and request for leave to file out-of-time answer and in entering judgment against it for punitive damages.

In Case No. A98A2421, Antonio Hackett and Allison Studdard (plaintiffs) appeal the trial court's grant of K-Mart's motion to withdraw admissions of fact and the imposition of a cap on the punitive damage award, pursuant to OCGA § 51-12-5.1 (g).

Plaintiffs filed separate tort actions against K-Mart, alleging that as they were exiting the Super K Center in Rome, Georgia, on November 15, 1996, they were violently attacked by a K-Mart security guard who committed an assault and battery upon them. The complaints further alleged that the K-Mart security guard then falsely arrested and imprisoned Hackett in a malicious manner. The

complaints sought compensatory and punitive damages against K-Mart.

A default judgment as to liability was entered in each of those cases. The trial court denied K-Mart's motion to set aside default judgment and request for leave to file out-of-time answer. The trial court granted K-Mart's motion to withdraw admissions of fact. Thereafter, a jury trial was held to determine compensatory and punitive damages. The jury awarded compensatory damages of $60,000 to Hackett and $50,000 to Studdard. After finding that the defendant did not act with the specific intent to cause harm, the jury awarded $600,000 in punitive damages to each of the plaintiffs. Judgment was entered on June 19, 1998.

### Case No. A98A2420

1. K-Mart contends that the trial court erred in denying its motion to open the default judgment entered against it, enumerating only that the evidence demanded a finding of excusable neglect. We disagree and affirm as to this enumeration.

> Under OCGA § 9-11-55 (b), a prejudgment default may be opened on one of three grounds if four conditions are met. The three grounds are: (1) providential cause, (2) excusable neglect, and (3) proper case; the four conditions are: (1) showing made under oath, (2) offer to plead instanter, (3) announcement of ready to proceed with trial, and (4) setting up a meritorious defense. The question of whether to open a default on one of the three grounds noted above rests within the discretion of the trial judge.

(Citations, punctuation and emphasis omitted.) *Follmer v. Perry*, 229 Ga. App. 257, 258 (1) (493 SE2d 631) (1997).

> The sole function of an appellate court reviewing a trial court's denial of a motion to open default is to determine whether all the conditions set forth in OCGA § 9-11-55 have been met and, if so, whether the trial court abused its discretion based on the facts peculiar to each case.

(Punctuation omitted.) Id.

In the present case, the complaints were filed on July 7, 1997, in the Superior Court of Floyd County. The complaints were served on K-Mart by the sheriff on July 8, 1997. Service was accepted on behalf of K-Mart by Tony Barnes, an assistant hard-lines manager, at the Super K Center. Barnes deposed that he brought the complaints to the store manager's attention, who told him to take them to the loss

control department, which he did. Barnes did not recall precisely to whom he delivered the complaints, but he believed employees named Clint and Chad were present in the loss control office when he dropped them off. Barnes had no knowledge as to what happened to the complaints after he delivered them to the loss control office.

In the meantime, plaintiffs' attorney forwarded a courtesy copy of Hackett's complaint to an adjuster working for K-Mart which was received on July 11, 1997. Although the complaint was not stamped filed, the attached letter indicated that the complaint was being forwarded to the Clerk of Floyd Superior Court for filing and service on the same date as the letter to the adjuster. Plaintiffs' counsel also sent the same adjuster a copy of Studdard's complaint. On July 14, 1997, the adjuster and plaintiffs' counsel discussed settlement, but no agreement was reached. Plaintiffs' counsel testified that during this call he informed the adjuster that the complaints had been served and that he would talk to K-Mart's lawyer once the answers had been filed. On August 26, 1997, plaintiffs' counsel called the adjuster and asked who was representing K-Mart. The adjuster responded that no attorney had been retained because K-Mart had not been served. Plaintiffs' counsel informed her that she was mistaken before concluding the conversation. That same day, August 26, 1997, Hackett and Studdard obtained default judgments against K-Mart.

K-Mart contends that the adjuster's failure to forward the copies of the complaints to headquarters and retain counsel was excusable because she is not an attorney and should not be held to the same standard as an attorney. K-Mart also argues that their failure to timely answer the complaints was excusable, contending that the actions of a former employee, Martin Davis, were intentional and done to harm K-Mart.

Davis deposed that at some time in August he discovered the service copies of the complaints in a file drawer used to store training materials. He left the papers where he found them. Shortly after he saw the suit papers, he resigned as a condition of a workers' compensation settlement he received. K-Mart maintains that had Davis brought the suit papers to the attention of another manager, the complaints would have been forwarded to K-Mart's headquarters within the time allowed to respond to the complaints or at least within the time to open default as a matter of right. However, K-Mart's arguments are mere assertions, unsupported by the record. First, Davis is not sure of the exact date he found the complaints. He deposed that "shortly after" he saw the service copies of the complaints, he resigned, which was on August 28, 1997. Therefore, it is not clear whether K-Mart could have opened the default as a matter of right. Second, Davis deposed that he had been informed that the

complaints had been forwarded to headquarters. And third, Barnes deposed that he showed the complaints to the store manager after he was served with them, so the store manager was already aware of the service of the complaints. Yet, the record contains no testimony from the store manager as to why he failed to follow up on the status of these lawsuits.

It is undisputed that K-Mart was properly served, that it received plaintiffs' complaints, as well as telephone communication from plaintiffs' attorney, that the store manager was aware of the service of the complaint, and that it did not timely answer the complaints. K-Mart contends that it was the actions and failures of its employees and agents, none of whom were attorneys, which resulted in its failure to answer the complaint as required by law, and therefore, K-Mart should be excused for such failure. K-Mart chooses its employees and agents and is responsible for their actions and failures. It is also responsible for their supervision.

Applying K-Mart's argument to its logical conclusion, plaintiffs would be excused for the failure of their agents to timely file a complaint within the statute of limitation. In such a case, it would not have been the client's fault that the filing date was missed. This the law does not permit. While the law does provide a limited right for defendants to avoid the responsibility for their failure to timely answer plaintiffs' complaint, defendants are not permitted to freely open default or set aside default judgments unless, in the discretion of the trial court, they meet the statutory requirements for such action. The trial court concluded that K-Mart was not entitled to the relief sought.

We cannot say that the trial court abused its discretion in denying K-Mart's motion to set aside the default judgment entered against it and to open default. As this is the sole error enumerated which relates to the trial court's failure to set aside the default judgment, we do not address those separate arguments made in K-Mart's brief concerning the trial court's imposition of time limitations on the presentation of evidence at the hearing on K-Mart's motion to set aside default judgment. Georgia law requires that each error be separately enumerated. OCGA § 5-6-40; Court of Appeals Rule 22. Parties are not permitted to enlarge their enumeration of errors by including additional issues in their brief. *Leniston v. Bonfiglio*, 138 Ga. App. 151 (226 SE2d 1) (1976); *MacDonald v. MacDonald*, 156 Ga. App. 565 (275 SE2d 142) (1980). Thus, we treat those arguments as having been abandoned by K-Mart as they were not separately enumerated. *Morris v. State Farm Mut. Auto. Ins. Co.*, 203 Ga. App. 839 (418 SE2d 119) (1992).

2. In its second enumeration of error, K-Mart contends that the trial court erred in entering a judgment against it for punitive dam-

ages in any amount, based solely on the contention that punitive damages were not permitted for torts committed between July 1, 1987 and April 14, 1997. Therefore, we address only that issue in this division.

On appeal, K-Mart argues, for the first time, that punitive damages were not statutorily available for torts committed between July 1, 1987 and April 14, 1997. Although K-Mart acknowledges that it did not preserve this enumeration of error by raising it in the trial court, it contends that this Court should consider its enumeration of error under the plain error exception noted in *Drug Emporium v. Peaks*, 227 Ga. App. 121, 125-127 (488 SE2d 500) (1997). Interestingly, *Drug Emporium* involves a cause of action which arose in approximately 1994-1995, and a default judgment was entered on December 29, 1995. Contrary to K-Mart's position, *Drug Emporium* clearly approved a default judgment as to liability for punitive damages in a proper case. Such a proper case exists, where the complaint outlines the facts upon which the claim is made, alleges malicious conduct by the defendant, and seeks punitive damages.

Here, by failing to answer plaintiffs' complaints, K-Mart judicially acknowledged that as Hackett and Studdard exited the K-Mart store, they were violently attacked by a K-Mart security guard and that the security guard acted maliciously in falsely arresting and imprisoning Hackett. Such facts clearly support an award of punitive damages. No clear error exists in the present case to support the application of the clear error rule, as there was in *Drug Emporium*. *Drug Emporium* is factually distinguishable.

In *Drug Emporium*, the trial court, with full knowledge of the applicable Code section, gave the punitive damages jury charge requested by the plaintiff, which was based on the former law. The trial court also failed to follow the appropriate procedures regarding punitive damages and awarded such damages to a party who did not pray for them. This Court held:

> We cannot affirm an award of punitive damages in which the trial court declined to follow the procedures and standards now required by OCGA § 51-12-5.1, awarded punitive damages against appellant Drug Emporium to a party who did not pray for them, and charged the jury based on an outdated punitive damage Code section.

Id. at 124 (2).

K-Mart argues that because of the language used by the legislature in its amendment of OCGA § 51-12-5.1 (h) on April 14, 1997, punitive damages were not recoverable in Georgia during the period of July 1, 1987 through April 14, 1997. K-Mart argues that since this

amendment struck the entire original Code section 51-12-5.1 (h), enacted in 1987, which applied to "causes of action arising on or after July 1, 1987," and enacted a new Code section 51-12-5.1 (h), which provided that "[t]his Code section shall apply only to causes of action arising on or after April 14, 1997," punitive damages were unavailable in this case where the cause of action arose on November 15, 1996. See Ga. L. 1997, p. 837, § 1; Ga. L. 1987, pp. 915, 919, § 5.

The April 14, 1997 amendment of OCGA § 51-12-5.1 was an adjustment to the statute which did not change the basic structure of the law. It provided that its purpose was to remove "the limitation on punitive damages for tort cases involving the influence of intoxicating or toxic agents on the defendant; to eliminate a provision relating to liability of third parties as joint tortfeasors; to provide for an effective date; to provide for applicability; to repeal conflicting laws; and for other purposes." Ga. L. 1997, p. 837, § 1. It is clear from the above language, that the intention of the legislature in the 1997 amendment was to simply remove a limitation on punitive damages awards in Georgia after April 14, 1997, not to create a ten-year gap in the availability of such damages to the citizens of Georgia.

It has long been recognized that where a repealing statute re-enacts the old law, the old law operates without interruption. See *Sayer v. Brown*, 119 Ga. 539, hn. 6 (46 SE 649) (1904); *Webb v. Echols*, 211 Ga. 724, 727 (88 SE2d 625) (1955). This statutory construction principle has been used in instances when such a construction was necessary to save an act of the General Assembly from unconstitutionality or when such a construction eliminated an ambiguity created by the General Assembly. At best, it could be argued that the language of the 1997 amendment creates an ambiguity as to the legislature's intention, which ambiguity we resolve in favor of the application of the punitive damages statute to the case at hand.

We note that even if the legislature had created the ten-year gap in the availability of statutory punitive damages as contended by K-Mart, the common law right to punitive damages would then apply. In the absence of a governing statute, we look to the common law for guidance. Cf. *Union Circulation Co. v. Trust Co. Bank*, 143 Ga. App. 715, 716 (1) (240 SE2d 100) (1977), rev'd on other grounds, *Trust Co. Bank v. Union Circulation Co.*, 241 Ga. 343 (245 SE2d 297) (1978); *Maynard v. Readdick*, 128 Ga. App. 368, 370 (4) (196 SE2d 688) (1973).

> The right of the jury to give exemplary damages for injuries wantonly, recklessly, or maliciously inflicted has been said to be "as old as the right of trial by jury itself"; and "is not, as many seem to suppose, an innovation upon the rules of the common law." Walton, J., in *Goddard v. Grand Trunk R. Co.*, 57 Me. 218, 2 Am. Rep. 39.

12 Am. & Eng. Enc. Law, 5, n. 3 (1899). Exemplary damages

> "is a well-established principle of the common law," said Mr. Justice Grier in *Day v. Woodworth*, 13 How. (U. S.) 363, "that in actions of trespass and all actions on the case for torts, a jury may inflict what are called exemplary, punitive, or vindictive damages upon a defendant, having in view the enormity of his offense rather than the measure of compensation to the plaintiff. We are aware that the propriety of this doctrine has been questioned by some writers; but if repeated judicial decisions for more than a century are to be received as the best exposition of what the law is, the question will not admit of argument."

12 Am. & Eng. Enc. Law, 7, n. 6 (1899).

3. K-Mart contends that the underlying complaints fail to adequately allege plaintiffs' entitlement to punitive damages under OCGA § 51-12-5.1. Plaintiffs' complaints allege that as Hackett and Studdard exited the K-Mart store, they were violently attacked by a K-Mart security guard and that the security guard acted maliciously in falsely arresting and imprisoning Hackett. Based on the actions by K-Mart's employees, plaintiffs prayed for compensatory as well as punitive damages. The allegations, which stand admitted as a result of K-Mart's failure to answer the complaint, clearly support an award of punitive damages. *Cohran v. Carlin*, 254 Ga. 580, 585 (331 SE2d 523) (1985); *Etheridge v. Kay*, 153 Ga. App. 399 (265 SE2d 332) (1980); *Berkner v. Dannenberg*, 116 Ga. 954, hn. 3 (43 SE 463) (1903).

### Case No. A98A2421

4. In their first enumeration of error in their cross-appeal, the plaintiffs contend that the trial court erred in allowing K-Mart to withdraw the admission that each plaintiff individually had suffered $2,500,000 in damages as a result of K-Mart's actions. K-Mart failed to respond to plaintiffs' request to admit that "the Defendant has injured and damaged each Plaintiff in the amount of $2,500,000.00 as a result of the incidents alleged in the complaints filed in the above-styled cases."

The trial court did not abuse its discretion in allowing such admission to be withdrawn because this Court has previously held that the amount of damages a plaintiff has suffered is not a proper request to admit because the answer is outside the knowledge of the defendant. See *Cole v. Smith*, 182 Ga. App. 59, 63-64 (354 SE2d 835) (1987); see also *Rowland v. Tsay*, 213 Ga. App. 679 (1) (445 SE2d 822) (1994) (withdrawal of admission pursuant to the trial court's discretion).

5. Plaintiffs contend that the trial court erred in applying the

$250,000 cap contained in OCGA § 51-12-5.1 (g) to their punitive damages award. Plaintiffs argue that K-Mart's intent to cause damage to them is established by its failure to timely answer the complaint, and that the question of such intent should not have been submitted to the jury in relation to the prayers for punitive damages as required by *McDaniel v. Elliott*, 269 Ga. 262 (497 SE2d 786) (1998).

The record reflects that this issue was submitted to the jury with the concurrence of both sides. Plaintiffs' counsel specifically requested that the trial court charge the jury on this matter and submit the question of K-Mart's intent to the jury pursuant to *McDaniel v. Elliott*, supra. The jury specifically found that K-Mart did not intend to harm the plaintiffs, and thus the court properly applied the $250,000 cap on the punitive damages required by OCGA § 51-12-5.1 (g). A party cannot complain, where as here, the trial court adopts the procedures requested by such party. In any event, the trial court properly followed the requirements outlined in *Elliott v. McDaniel*, supra, as to punitive damages.

*Judgments affirmed. McMurray, P. J., and Eldridge, J., concur.*

DECIDED MARCH 18, 1999 —

*Alston & Bird, James C. Grant, Jeffrey J. Swart*, for appellant.
*Cook & Connelly, Bobby Lee Cook, Gregory, Christy & Maniklal, Hardy Gregory, Jr.*, for appellees.