A99A2234. HAWKINS et al. v. GMAC MORTGAGE
CORPORATION.
(526 SE2d 421)

ELDRIDGE, Judge.

This case arises as a result of protracted litigation concerning the breach of a sales contract for a luxury home in Fulton County. The prospective purchasers, La-Van and Wendy Hawkins, appellants, challenge the grant of summary judgment to the seller, GMAC Mortgage Corporation ("GMAC"), appellee.

The facts, viewed in the light most favorable to the appellants, as nonmovants,[1] are as follows: In May 1996, the appellants contracted to purchase an Atlanta home from GMAC for $1,575,000. Christopher Investment Properties, Inc., d/b/a Re/Max Northwest ("Re/Max"),[2] served as the real estate broker for the purchase. The appellants paid $50,000 in earnest money into an escrow account. The sales contract was contingent on the appellants' ability to obtain a 75 percent mortgage loan, i.e., $1,181,250. The appellants applied for a $1,400,000 loan, but were denied; there is no evidence in the record that they applied for a 75 percent mortgage on the property. The appellants refused to close on the home, claiming that they were unable to secure financing and were, therefore, relieved of the obligation to purchase the home. GMAC and Re/Max disagreed and contended that the appellants breached the sales contract.

On October 2, 1996, Re/Max notified the appellants of its intent to disburse the $50,000 in earnest money within 15 days, pursuant to section 3 of the contract and Chapter 520-1-34 of the Rules & Regulations of the Georgia Real Estate Commission. The letter informed the appellants that the earnest money would be sent to GMAC; Re/Max neither sought nor received any portion of the earnest money. The appellants responded on October 15, 1996, again asserting that they had not breached the contract and insisting that the earnest money be refunded to them. On October 28, 1996, GMAC accepted the $50,000 earnest money disbursement.

In December 1996, Re/Max sued the appellants for the broker's

---

[1] *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). Even so, the trial court has ruled that the appellants have, by default, admitted certain damaging evidence, as demonstrated below. See OCGA § 9-11-36.

[2] Re/Max is not a party to this appeal.

commission on the aborted sale. The appellants counterclaimed against the broker and also filed a third-party claim against GMAC. GMAC answered and filed a counterclaim against the appellants for $275,000, the difference between the contract purchase price ($1,575,000) and the price for which the property later sold ($1,300,000), when GMAC attempted to mitigate its damages after the appellants' breach.

The appellants failed to appear at two depositions or otherwise cooperate in any discovery in the Re/Max suit. As a result, the trial court sanctioned the appellants by striking their answer and counterclaim against Re/Max and issued a default judgment in favor of Re/Max.[3]

In March 1998, GMAC mailed to the appellants a request for admissions in its counterclaim. The request included, inter alia, the following admissions: that the appellants peremptorily breached their duty to GMAC under the contract; that GMAC had fulfilled all of its duties under the contract; that GMAC was specially damaged in the amount of $275,000 in lost profits on the sale; and that these lost profits were the "sole measure of damages incurred by GMAC due to [the appellants'] breach."

The appellants failed to answer the request for admissions. Therefore, the trial court treated GMAC's allegations as conclusively admitted by the appellants. See OCGA § 9-11-36 (a), (b); *ETI Corp. v. Hammett*, 140 Ga. App. 618, 619 (231 SE2d 545) (1976). On November 5, 1998, the trial court granted GMAC's motion for summary judgment and awarded damages to GMAC in the amount of $275,000. This appeal followed. *Held*:

1. In their first enumeration, the appellants claim that the trial court erred in awarding GMAC $275,000 in damages, asserting that the sales contract provided that the earnest money would serve as liquidated damages if the appellants breached the contract. See OCGA § 13-6-7. The appellants' argument relies on the following contractual provisions:

3. *Earnest Money*. . . . The parties to this agreement understand and acknowledge that disbursement of earnest money held by Holder, escrow agent, can occur only as follows: at closing; upon written agreement signed by all parties having an interest in the funds; upon court order; *upon failure of*

---

[3] The appellants subsequently were found to be in wilful contempt under OCGA § 15-1-4 for their failure to cooperate with post-judgment discovery, which included their failure to appear for depositions pursuant to a subpoena. The appellants and Re/Max eventually agreed on a payment schedule for the damages, and a consent order was issued by the trial court.

*any contingency or failure of either party to fulfill his obliga-tions contained in this Agreement*; or as otherwise set out herein. . . .

11. *Brokerage*. . . . Buyer agrees that if Buyer fails or refuses to perform any of Buyer's covenants herein, Buyer shall forthwith pay Broker the full commission immediately; provided that Broker may first apply one-half of the earnest money toward payment of, but not to exceed, the full com-mission and may pay the balance thereof to Seller as liqui-dated damages to Seller, *if Seller claims balance as Seller's liquidated damages in full settlement of any claim for dam-ages*, whereupon Broker shall be released from any and all liability for return of the earnest money to Buyer.

. (Emphasis supplied.)

The contract language in this case is "clear, unambiguous, and capable of only one reasonable interpretation, [so that] no construc-tion is necessary or even permissible by the trial court." (Citations and punctuation omitted.) *Estate of Sam Farkas v. Clark*, 238 Ga. App. 115, 120 (517 SE2d 826) (1999). When the provisions cited above are construed in pari materia, they provide for the disburse-ment of the earnest money as liquidated damages in specific circum-stances. The facts of this case fall within these circumstances.

The disbursement to GMAC was made pursuant to section 3 of the contract, i.e., following a breach by the appellants. Under section 11, such disbursement could be made only "if Seller claims balance [of earnest money] as Seller's liquidated damages in full settlement of any claim for damages." Therefore, GMAC's election, demand, and acceptance of the $50,000 in earnest money from the broker under the contract precludes it from pursuing additional remedies for the same breach.[4] See OCGA § 9-2-4.

The trial court erred in awarding GMAC damages for lost prof-its.[5] We reverse the trial court's grant of summary judgment to

---

[4] If GMAC claimed entitlement to the earnest money but was unwilling to accept the funds as liquidated damages, Re/Max should have filed an interpleader action and deposited the earnest money into the registry of the court. See OCGA § 9-11-22 (a).

[5] Notably, the appellants are not bound by their admissions that the sole measure of damages in this case was lost profits and that GMAC lost profits in the amount of $275,000. If the contract had not provided for liquidated damages, the amount of unliquidated dam-ages would have been a question of fact for the jury. OCGA § 13-6-4; *Magnan v. Miami Air-craft Support*, 217 Ga. App. 855 (459 SE2d 592) (1995); *Ward v. Dollar*, 216 Ga. App. 143 (453 SE2d 142) (1995); *Quigley v. Jones*, 174 Ga. App. 787, 788 (332 SE2d 7) (1985); see also OCGA § 9-11-55 (a). "[T]he amount of damages a plaintiff has suffered is not a proper request to admit because the answer is outside the knowledge of the defendant. [Cits.]" *K-Mart Corp. v. Hackett*, 237 Ga. App. 127, 133 (4) (514 SE2d 884) (1999). See also *Cole v. Smith*, 182 Ga. App. 59, 63-64 (354 SE2d 835) (1987). Therefore, the appellants' admissions

GMAC and remand this case with directions to grant summary judgment in favor of the appellants, because there has been a full satisfaction for the contract breach under the contract's remedies.

2. The appellants' second enumeration is controlled by our decision in Division 1, supra.

*Judgment reversed and remanded with direction. Blackburn, P. J., and Barnes, J., concur.*

DECIDED DECEMBER 2, 1999.

*Middleton, Mathis, Adams & Tate, Charles A. Mathis, Jr.*, for appellants.

*Campbell, Martin & Manley, David B. Manley III*, for appellee.

could not have provided the evidentiary basis for an award of damages on summary judgment.