A07A0505. COMCAST CORPORATION et al. v. WARREN.
(650 SE2d 307)

BARNES, Chief Judge.

COMCAST[1] Corporation appeals the denial of its motion to open default and the denial of its motion for a directed verdict on its liability for punitive damages. As we find the allegations in the

---

[1] Samuel Warren sued Media One Cable Advertising of Metropolitan Atlanta, LLC, Media One Enterprises, Inc., Media One Financial Services, Inc., Media One of Colorado, Inc., Media One of Greater Florida, Inc., John Doe Corporation A, John Doe Corporation B, and John Doe Corporation C (collectively "COMCAST"). Service was perfected on CT Corporation, the

complaint are sufficient, standing alone, to show that COMCAST should be liable for punitive damages, we affirm the judgment of the trial court. COMCAST has not appealed the award of compensatory damages.

Samuel Warren, the plaintiff below, alleges he sustained severe, painful and permanent injuries in an automobile accident because employees of Media One failed to warn him of an obstruction in the roadway that they created. As a result, Warren stopped suddenly without striking Media One's vehicle or the obstruction, but he then was struck from the rear by a vehicle driven by another driver, Kimberly Neese.

Even though proper service was obtained, the Media One defendants failed to answer and the case went into default. Later, COMCAST moved to open the default, but its motion was denied and the trial court granted judgment to Warren as to liability. The case then proceeded to trial on damages, and the jury returned a verdict for Warren in the amount of $280,000 in compensatory damages and $720,000 in punitive damages. The trial court later reduced the award of punitive damages to $250,000 as required by OCGA § 51-12-5.1.

1. Because a determination that the trial court erred by denying COMCAST's motion to open the default would be dispositive of the appeal, we will address that issue first. COMCAST contends it satisfied the requirements of OCGA § 9-11-55 (a) and its motion to open the default should have been granted because it acted in good faith, its counsel immediately took steps to obtain extensions of time in which to answer, and Warren's lead counsel wrongfully refused to consent to the final extension after another lawyer on the case had granted it.

Warren responds, however, that whether to open a default rests within the discretion of the trial court and that the trial court did not abuse its discretion by denying the motion to open default. Warren points to the fact that COMCAST did not answer within the 30 days allowed by law and did not answer within the earlier extension to which he consented. He further contends that COMCAST's reason for not answering is not compelling.

Although the rule permitting opening of default is remedial in nature and should be liberally applied, and whenever possible cases should be decided on their merits as default judgment is not favored in law, *Boynton v. State Farm &c. Ins. Co.*, 207 Ga. App. 756 (1) (429

---

registered agent for the Media One defendants. The Media One defendants were subsequently acquired by COMCAST, and COMCAST assumed the liability for the Media One defendants in this case.

SE2d 304) (1993), this rule is not absolute. A defendant must still satisfy the requirements of OCGA § 9-11-55 (b):

> At any time before final judgment, the court, in its discretion, upon payment of costs, may allow the default to be opened for providential cause preventing the filing of required pleadings or for excusable neglect or where the judge, from all the facts, shall determine that a proper case has been made for the default to be opened, on terms to be fixed by the court. In order to allow the default to be thus opened, the showing shall be made under oath, shall set up a meritorious defense, shall offer to plead instanter, and shall announce ready to proceed with the trial.

Thus, to be entitled to open a default a defendant must establish one of the three grounds for doing so, and meet the four conditions precedent.

> The three grounds are: (1) providential cause, (2) excusable neglect, and (3) proper case; the four conditions are: (1) showing made under oath, (2) offer to plead instanter, (3) announcement of ready to proceed with trial, and (4) setting up a meritorious defense. This court has previously held that the "showing" required by this Code section to be made "under oath" includes the showing of a "meritorious defense." Generally, the opening of a default rests within the sound discretion of the trial court. However, compliance with the four conditions is a condition precedent; in its absence, the trial judge has no discretion to open the default.

(Citations and punctuation omitted.) *C. W. Matthews Contracting Co. v. Walker*, 197 Ga. App. 345, 346 (1) (398 SE2d 297) (1990).

Pretermitting whether COMCAST satisfied the four conditions precedent for the trial court to exercise its discretion in opening a default, COMCAST failed to show that this case fell within any of the three grounds for opening a default. This case went into default because, although timely receiving notice that Warren's complaint had been served, the regional counsel did not retain local counsel to answer the complaint. Further, even when his assistant realized the case had not been timely answered and obtained an extension of time in which to answer, local counsel was still not retained and no answer was filed within the agreed-to extension. Consequently, regardless of whether a further extension was agreed to and withdrawn, COMCAST did not timely answer the complaint, did not answer within the period of the first extension, and did not request the additional

extension until after the time granted in the first extension had expired. Moreover, the motion to open the default was not filed until almost three months after the answer was due.

> Where a defendant has been properly served and relies upon the insurer, the insurance agent, or counsel to file an answer timely, the failure of the defendant's agent, counsel, or insurer is imputable to the defendant in determining the presence or absence of excusable neglect. Excusable neglect means a reasonable excuse or justification for failure to answer timely; it is that neglect which might have been the act of a reasonably prudent person under the same circumstances.

(Citations and punctuation omitted.) *Drug Emporium v. Peaks*, 227 Ga. App. 121, 123-124 (1) (488 SE2d 500) (1997). Under the facts described above, the trial court did not abuse its discretion by denying the motion to open default. No valid reason has been given for not filing a timely answer, or for failing to file an answer within the time granted by Warren. Further supporting this conclusion is the fact that at the time COMCAST requested the first extension in which to answer, it was already in default.

2. COMCAST also contends the trial court erred by denying its motion for a directed verdict on its liability for Warren's punitive damages. The motion asserted that liability for punitive damages was not established by the default because the complaint did not contain proper allegations supporting such damages, the facts alleged did not reach the level of conduct necessary to warrant punitive damages under OCGA § 51-12-5.1 (d), and no evidence was introduced to support a punitive damages award under OCGA § 51-12-5.1 (d). COMCAST's enumeration of error, however, encompasses only the first two grounds for its motion.

COMCAST asserts that the allegations in Warren's complaint, even if admitted by the default, were not sufficient to support the award of punitive damages because the complaint only asserted a proper case for punitive damages against the driver of the car that hit Warren from the rear and Warren dismissed that party from the case after COMCAST's motion to open default was denied. Warren asserts that the complaint contained sufficient allegations of fact to warrant the award of punitive damages without additional evidence being presented at the hearing.

On the issue of COMCAST's liability for punitive damages, the only question before us is whether the allegations of the complaint, standing alone, were sufficient to create liability for punitive damages in any amount.

OCGA § 51-12-5.1 (b) provides that

[p]unitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.

This section also provides that

[a]n award of punitive damages must be specifically prayed for in a complaint. In any case in which punitive damages are claimed, the trier of fact shall first resolve from the evidence produced at trial whether an award of punitive damages shall be made. This finding shall be made specially through an appropriate form of verdict, along with the other required findings.

OCGA § 51-12-5.1 (d) (1). Punitive damages cannot be imposed, however, without a finding of some form of culpable conduct, and negligence, even gross negligence, is not sufficient to support an award of punitive damages. *Colonial Pipeline Co. v. Brown*, 258 Ga. 115, 118 (3) (b) (365 SE2d 827) (1988). Consequently, something more than commission of a tort is always required to impose punitive damages. There must be aggravating circumstances or outrage, such as spite, malice, or a fraudulent or evil motive on the part of the defendant, or such a conscious and deliberate disregard of the interests of others that the conduct may be called wilful or wanton. *Cullen v. Novak*, 201 Ga. App. 459, 460 (2) (411 SE2d 331) (1991). In this sense, conscious indifference to consequences means an intentional disregard of the rights of another, knowingly or wilfully. *Read v. Benedict*, 200 Ga. App. 4, 7 (2) (406 SE2d 488) (1991).

When, in cases concerning punitive damages,

reviewing a motion for directed verdict, the trial and appellate courts have the same basic task: each must determine as a matter of law whether the evidence was sufficient under the clear and convincing standard. [*Uniroyal Goodrich Tire Co. v. Ford*, 218 Ga. App. 248, 255, n. 2 (461 SE2d 877) (1995) (the appellate court will not defer to the trial judge's determination if there is any evidence "whatsoever" to support it; rather, the issue on appeal remains whether there is any evidence sufficient "under the clear and convincing standard"), rev'd on other grounds, *Ford v. Uniroyal Goodrich Tire Co.*, 267 Ga. 226 (476 SE2d 565) (1996).] "(C)lear and convincing evidence is an intermediate standard of proof,

requiring a higher minimum level of proof than the prepon-derance of the evidence standard, but less than that re-quired for proof beyond a reasonable doubt." [(Citations and punctuation omitted.) *Clarke v. Cotton*, 263 Ga. 861, 862, n. 1 (440 SE2d 165) (1994).]

*Ambling Mgmt. Co. v. Purdy*, 283 Ga. App. 21, 32 (7) (640 SE2d 620) (2006). Thus, in considering whether COMCAST's default was suffi-cient to establish the elements necessary to support the award of punitive damages,

[t]he rule is that a defendant in default is in the position of having admitted each and every material allegation of the plaintiff's petition except as to the amount of ex delicto or unliquidated ex contractu damages alleged. The default concludes the defendant's liability, and estops him from offering any defenses which would defeat the right of recovery.

(Citations and punctuation omitted.) *Nova Group, Inc. v. M. B. Davis Elec. Co.*, 187 Ga. App. 403, 406 (370 SE2d 626) (1988). Further,

[a] judgment by default properly entered against parties sui juris operates as an admission by the defendant of the truth of the definite and certain allegations and the fair inferences and conclusions of fact to be drawn from the allegations of the declaration. Conclusions of law and facts not well pleaded and forced inferences are not admitted by a default judgment.

(Citation and punctuation omitted.) *Drug Emporium v. Peaks*, supra, 227 Ga. App. at 128 (2) (c).

Consequently, we must review Warren's complaint to determine whether its allegations authorize the imposition of punitive damages without further proof. The complaint alleges:

¶ 40. . . . Neese[, the driver of the vehicle that hit Warren,] negligently, recklessly, wantonly, and with a con-scious disregard to the consequences did operate a vehicle in such a manner as to cause it to violently collide into a car being driven by . . . Warren.

¶ 41. At said time and place, [Neese], in a fit of anger and road rage was busy making obscene gestures and shooting birds instead of safely operating her vehicle and watching where she was driving.

. . .

¶ 45. . . . Defendant[s] John Doe A and/or John Doe B negligently, recklessly, wantonly, and with a conscious disregard to the consequences failed to warn [Warren] of the construction and/or obstruction on the roadway started by [them].

¶ 46. . . . Defendant[s] John Doe A and/or John Doe B were acting under the complete knowledge, consent, and express authority of agents, officers and employees of [COMCAST].

¶ 47. [COMCAST] [is] liable to [Warren] for the negligent, reckless, and wanton acts committed by its agent and employee, Defendant John Doe A and/or John Doe B.

¶ 48. All of [Warren's] injuries and damages were proximately caused by the joint and several negligence of the Defendants.

. . .

¶ 52. Defendant, Kimberly E. Neese, drove a motor vehicle while in a fit of anger and road rage, in conscious indifference to the consequences of her actions, evincing an entire want of care, and as a result, caused the vehicle to collide into the vehicle being driven by Plaintiff causing Plaintiff to suffer injuries to his body and sustaining both physical and mental trauma. Accordingly, Plaintiff is entitled to additional damages, jointly and severally, from said Defendants under OCGA § 51-12-5 and other applicable law as there are aggravating circumstances which exist in this tort action, and to deter Defendant, Kimberly E. Neese, from further and other acts.

The relevant parts of Warren's prayer for relief state:

. . .

(b) That Plaintiff has and recover compensatory damages from such Defendants, jointly and severally, as the jury deems are liable to Plaintiff, and in such an amount as the jury deems just and appropriate to fully and completely compensate Plaintiff for all of his injuries and pain and

suffering, mental, physical, and emotional, past, present, and future;

(c) That Plaintiff has and recovered from said Defendants, jointly and severally, special damages for past and future medical expenses and loss of income in the past and future in such an amount as shall be proven at trial;

. . .

(f) That Plaintiff has and recovered from Defendants punitive damages pursuant to OCGA § 51-12-5.1, and other applicable law in such an amount as the jury shall deem just and appropriate to fully and yet completely deter Defendants from such further and other acts.

The allegations in Warren's complaint which go to this issue are in paragraph 45 of the complaint which asserts that defendants John Doe A and/or John Doe B, were employees of COMCAST and in paragraphs 45 and 47 did "negligently, recklessly, wantonly, and with a conscious disregard to the consequences failed to warn [Warren] of the construction and/or obstruction on the roadway started by [them]."

Taken together, the allegations of Warren's complaint establish that COMCAST's employees recklessly, wantonly, and with conscious disregard for the consequences, failed to warn Warren of an obstruction in the roadway that they created and, as joint tortfeasors with Neese, caused Warren's injuries. These allegations, which stand admitted by COMCAST's default, are sufficient to support the award of punitive damages by clear and convincing evidence. *K-Mart Corporation v. Hackett*, 237 Ga. App. 127, 133 (3) (514 SE2d 884) (1999).

3. COMCAST also contends that the trial court erred by "refusing to allow evidence of the nature and circumstances of COMCAST's alleged conduct during [the] punitive damages phase." The record, however, does not support this allegation.

The transcript of the hearing on punitive damages shows that the trial court asked COMCAST's counsel, "you don't have any evidence; is that right?" Counsel responded, "That's right." Contrary to Court of Appeals Rule 25 (a) (1) the brief does not contain "a statement of the method by which each enumeration of error was preserved for consideration," and it is not this court's function to cull the record on behalf of a party. *Stanford v. Paul W. Heard & Co.*, 240 Ga. App. 869, 870 (1) (525 SE2d 419) (1999); *Manderson & Assoc. v. Gore*, 193 Ga. App. 723, 733 (8) (389 SE2d 251) (1989). See also Court of Appeals Rule 25 (c) (3) (i). Therefore, there is nothing for us to

review, and COMCAST did not challenge in the trial court the amount of punitive damages awarded by a motion for a directed verdict.

*Judgment affirmed. Smith, P. J., and Miller, J., concur.*

DECIDED JULY 6, 2007 —
RECONSIDERATION DENIED JULY 27, 2007 — ■■■■■■■■■

*Carter & Ansley, Tommy T. Holland, John L. McKinley, Jr., John D. Hadden,* for appellants.

*Greer, Klosik, Daugherty & Swank, John F. Daugherty, William L. Swank II, Alina A. Krivitsky,* for appellee.